**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MUDDY WATERS CAPITAL LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>JOHN DOES 1-10,<br><br>      Defendants. | Case No.:<br><br>Related Action: 3:19 Civ. 1293-SK (N.D. Cal.)<br><br>**DECLARATION OF JORDAN FLETCHER IN SUPPORT OF MOTION TO COMPEL THIRD PARTY DISCOVERY** |

Jordan Fletcher declares as follows:

1.      I am the Principal of the law firm Fletcher Law, PLLC, counsel to plaintiff Muddy Waters Capital LLC ("MWC") in this action.

2.      I make this declaration in support of MWC's Motion to compel discovery from third parties Merrill Lynch Professional Clearing Corporation ("MLPro") and Bank of America Corporation ("BAC").

**Plaintiff's Discovery Requests to MLPro and BAC**

3.      Since before this lawsuit was filed in March 2019 in the United States District Court for the Northern District of California, MWC has made repeated attempts to retrieve documents and information related to the identity of the unknown John Doe defendants in this action from MLPro and BAC.

4.      In early October 2018, prior to the filing of this action, I contacted MLPro, MWC's direct counterparty to the brokerage agreement pursuant to which the securities transactions that are the subject of this insider trading lawsuit ("December 15 Transactions") were arranged, executed, and cleared, on MWC's and its principle, MLAF LP's, behalf. I requested that MLPro

1

and certain affiliated entities operated or controlled by Bank of America and/or Merrill Lynch (altogether, the "BAML Entities") voluntarily provide certain documents and other information concerning the identities of MWC's and the BAML Entities' trade counterparties in December 15 Transactions. I did not receive a response from the BAML Entities at that time.

5. On March 13, 2019, shortly after the filing of the Complaint in this action, I reached out to the BAML Entities again, renewing my request that the BAML Entities voluntarily comply with MWC's request for information and attaching the filed Complaint. On March 14, 2019, I received an email response from, and then spoke by telephone with, Susan J. Kivelson, Esq., an Associate General Counsel in Bank of America's legal department. Ms. Kivelson informed me that the BAML Entities would not consider or respond to MWC's document request absent service of a subpoena.

6. On April 30, 2019, MWC filed an *ex parte* motion for limited expedited discovery ("Expedited Discovery Motion"), requesting permission from the presiding judge, Magistrate Judge Sallie Kim, to serve subpoenas pursuant to Federal Rule of Civil Procedure ("FRCP") 45 on MLPro and the BAML Entities seeking documents and testimony tailored to uncover the identity of all outside counterparties to the December 15 Transactions, as well as basic information concerning the mechanics of those trades. By Order dated June 4, 2019, Judge Kim granted MWC's Expedited Discovery Motion ("Expedited Discovery Order").

7. On June 7, 2019, MWC served a FRCP 45 subpoena seeking documents and testimony upon MLPro ("First MLPro Subpoena"). By letter dated June 21, 2016, MLPro objected entirely and categorically to the First MLPro Subpoena. MLPro produced neither documents nor a corporate designee in response to the First MLPro Subpoena. During the course of subsequent communications with Ms. Kivelson over the ensuing five weeks, Ms. Kivelson represented to me

that MLPro had no documents concerning the December 15 Transactions and nothing responsive to the First MLPro Subpoena in its possession, custody, or control.

8. On October 2, 2019, MWC served FRCP 45 subpoenas upon three other BAML Entities, including BAC (the top-level corporate parent of all entities in the Bank of America Merrill Lynch ecosystem), seeking documents and testimony related to the December 15 Transactions, as well as documents and testimony concerning BAC's possession, custody, and/or control over such documents and information ("BAC Subpoena").

9. On October 18, 2019, after repeated requests, which went ignored, that MLPro proffer a FRCP 30(b)(6) witness, MWC served a second deposition subpoena pursuant to FRCP 45 and 30(b)(6) upon MLPro ("Second MLPro Subpoena").

10. In late October 2019, I was first contacted by outside counsel for MLPro and BAC, Luke Connelly Esq. of Winston & Strawn LLP. On November 4, 2019, Mr. Connelly stated that MLPro would agree to proffer a FRCP 30(b)(6) representative pursuant to the Second MLPro Subpeona, which deposition was held on November 13, 2019.  Mr. Connelly did not provide a firm response to my repeated requests to schedule a deposition of BAC's FRCP 30(b)(6) representative and for documents in BAC's possession.

11. At the deposition held November 13, 2019, MLPro's corporate representative testified, *inter alia*, that:

    a. MLPro does not know, and does not have access to, records or information concerning, the identity of any outside counterparty to the December 15 Transactions;

    b. because Merrill Lynch International ("MLI"), BAC's UK-based subsidiary, executed the trades, MLI is or should be in possession of transaction records

3

          reflecting the identity of any outside counterparty to the December 15 Transactions;

    c.    MLPro does have *some* documents in its possession that relate to the December 15 Transactions.

12.    By letter dated November 15, 2019, BAC objected categorically to the BAC Subpoena and stated that BAC "does not have any documents" identifying any outside counterparty to the December 15 Transactions. BAC's letter suggested that information and materials concerning the identity of any such outside counterparties are in the possession MLI.

13.    On November 19, 2019 I conferred with Mr. Connelly by phone and followed up by email. In that call and email, I asked Mr. Connelly to confirm by November 21, 2019 whether or not BAC would proffer a FRCP 30(b)(6) witness in response to the BAC Subpoena, and in my email I attached a list of FRCP 30(b)(6) deposition topics. I also requested production from MLPro of those certain documents that MLPro's corporate designee had testified are in MLPro's possession.

14.    Mr. Connelly agreed by phone on November 19 to confirm whether or not BAC would proffer a corporate designee by November 21. During a phone call on November 21, Mr. Connelly did not provide such confirmation, and although he said that he would do so by November 27, 2019, he never did.

15.    As of the date of this motion, BAC has still not agreed to comply with the BAC Subpoena's requirement that BAC produce an FRCP 30(b)(6) corporate designee, nor has MLPro produced the requested documents that MLPro's corporate designee testified are in MLPro's possession.

**Plaintiff's Discovery Requests to MLI**

16. On November 22, 2019, MWC sent a letter by hand delivery to MLI requesting voluntary disclosure of documents evidencing the identity of the counterparty purchasers in the December 15 Transaction. On November 25, 2019, MLI responded by letter, stating that it would not voluntarily produce information, but confirming that it does have in its possession certain counterparty information relating to the December 15 Transactions and would produce such information in response to an order from the appropriate UK authority.[1]

17. On November 26, 2019, I conferred by phone with counsel for MLI in London. During that call, counsel for MLI (i) re-confirmed that MLI has records in its possession which identify the name, address, and contact information of the counterparty purchasers in the December 15 Transactions, together with the trade times, dates, and quantities of bonds purchased in those trades; and (ii) indicated that such records comprise no more than a small handful of documents.

18. On November 27, 2019, MWC filed an *ex parte* motion with Judge Kim seeking issuance of a Letter of Request that could be used to obtain discovery from MLI in the United Kingdom via the Hague Convention procedures ("Letter of Request Motion").

19. As of the date of this filing, Judge Kim has not ruled on the Letter of Request Motion. MWC is advised by UK counsel that the process for obtaining discovery in the UK via Hague procedures may involve: (i) presenting a signed Letter of Request from Judge Kim to the appropriate UK authority, and requesting issuance of a UK discovery order; (ii) serving the UK discovery order, once issued, upon MLI in London; and (iii) litigating successfully against any

---

[1] On November 21, 2019, Mr. Connelly had suggested to me that, rather than having BAC or MLPro produce the requested records, the BAML Entities might provide MWC with a letter stating that MLI would produce the requested documents in response to a lawful order from the appropriate UK authority.

5

objections that MLI might pose to such an order in the UK. MWC has also been advised by UK counsel that – under even the best of circumstances – obtaining foreign discovery in the UK via the Hauge process can take many weeks or months. However, based on the representations of MWC's UK counsel, given the limited availability of pre-trial discovery in the UK, it is not clear that the UK Senior Master in charge of domesticating foreign discovery requests even has the authority to execute letters of request issued for the purpose of obtaining pre-trial discovery of documents without a trial date imminent. Case law explaining this this is attached hereto.

**Judge Kim's Deadline for MWC to Identity the John Doe Defendants**

20. During a case management conference held on November 18, 2019, Judge Kim cautioned counsel for MWC that if MWC is unable to obtain the identity of the John Doe defendants through discovery before the next case management conference, currently scheduled for February 24, 2020, Judge Kim may be forced to dismiss MWC's lawsuit.

**BAC's and MLPro's Consent to the Jurisdiction of this Court**

21. During our phone call on November 21, 2019, Mr. Connelly informed me that MLPro and BAC would consent to the jurisdiction of the United States District Court for the Southern District of New York for the resolution of a motion to compel discovery in a single joint proceeding.

**List of Exhibits Attached**

22. Attached hereto as **Exhibit A** is a true and correct copy of MWC's Complaint in this action.

23. Attached hereto as **Exhibit B** is a true and correct copy of Judge Kim's June 4, 2019 Expedited Discovery Order, authorizing MWC to serve third party subpoenas on MLPro and other BAML Entities.

24. Attached hereto as **Exhibit C** is a true and correct copy of MWC's June 5, 2019 subpoena served on MLPro on June 7, 2019 (*i.e.*, the First MLPro Subpoena).

25. Attached hereto as **Exhibit D** is a true and correct copy of MLPro's objections and responses to the First MLPro Subpoena.

26. Attached hereto as **Exhibit E** is a true and correct copy of MWC's October 17, 2019 FRCP 30(b)(6) subpoena served on MLPro on October 18, 2019 (*i.e.*, the Second MLPro Subpoena).

27. Attached hereto as **Exhibit F** is a true and correct copy of MWC's October 1, 2019 subpoena served on BAC on October 2, 2019 (*i.e.*, the BAC Subpoena).

28. Attached hereto as **Exhibit G** is a true and correct copy of the FRCP 30(b)(6) deposition topics provided to outside counsel for BAC on November 19, 2019.

29. Attached hereto as **Exhibit H** is a true and correct copy of excerpts of MLPro's November 13, 2019 FRCP 30(b)(6) deposition testimony.

30. Attached hereto as **Exhibit I** is a true and correct copy of BAC's November 15, 2019 letter objecting to the BAC subpoena.

31. Attached hereto as **Exhibit J** is a true and correct copy of a November 19, 2019 email from me to MLPro's outside counsel.

32. Attached hereto as **Exhibit K** is a true and correct copy of the November 25, 2019 response letter from MLI.

33. Attached hereto as **Exhibit L** is a true and correct copy of a Bank of America Corporation organizational chart dated as of July 17, 2019, obtained from Bank of America's public website on or about July 24, 2019. For convenience, highlighting has been added to the original.

34. Attached hereto as **Exhibit M** is a true and correct copy of a list the members of BAC's Board of Directors, obtained from Bank of America's public website on or about December 6, 2019. For convenience, highlighting has been added to the original.

35. Attached hereto as **Exhibit N** is a true and correct copy of an MLI "factsheet," dated as of August 20, 2018, obtained from Bank of America's public website on or about September 26, 2019. For convenience, highlighting has been added to the original.

36. Attached hereto as **Exhibit O** is a true and correct copy of excerpts of MLI's Annual Report and Financial Statements for 2018, obtained from Bank of America's public website on or about September 26, 2019. For convenience, highlighting has been added to the original.

37. Attached hereto as **Exhibit P** is a true and correct copy of the UK decision *Panaviotou v. Sony Music Ltd.*, Ch. 1992 P. No. 8711 (1993). For convenience, highlighting has been added to the original.

38. Attached hereto as **Exhibit Q** is a true and correct copy of the UK decision *State of Minnesota v. Philip Morris Inc.*, 1998 I.L.Pr. 170 (Eng. Ct. App. 1997). For convenience, highlighting has been added to the original.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 10, 2019
New York, New York

_____
Jordan Fletcher