# **EXHIBIT F**



**FLETCHER LAW,** PLLC
154 Grand Street • New York, NY 10013
T: (212) 320-8945 • F: (347) 983-0046
www.fletcherlaw.co

Jordan Fletcher, Principal
Email: jordan@fletcherlaw.co

October 1, 2019

BY HAND DELIVERY

Bank of America Corporation
BofA Securities Inc.
Merrill Lynch, Pierce Fenner & Smith, Inc.
c/o Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Re:   *Muddy Waters Capital LLC v. John Does 1-10*, 19 Civ. 1293 (N.D. Cal. 2019)
      FRCP Rule 45 Subpoena for Documents and Testimony

Dear Madam/Sir:

This law firm represents plaintiff Muddy Waters Capital LLC ("Muddy Waters") in the above-referenced action.

Pursuant to the enclosed Order issued by United States Magistrate Judge Sallie Kim of the Northern District of California on June 4, 2019, Muddy Waters is hereby serving upon each of Bank of America Corporation; BofA Securities Inc.; and Merrill Lynch, Pierce, Fenner & Smith, Inc. (altogether, the "BAML Entities") the enclosed subpoena pursuant to Federal Rule of Civil Procedure 45. The subpoena requires production of documents as well as attendance at a deposition by representatives of the BAML Entities.

Please note that the specific transactions about which Muddy Waters seeks information from the BAML Entities are identified by the letters "D" through "G" on the enclosed account statement.

Very truly yours,

Jordan Fletcher

# <u>Exhibit A</u>

**(Referenced Transactions)**

# Global Prime Brokerage

**Bank of America Merrill Lynch**

## MTD POSTED CASH ACTIVITY

Beneficial Owner: MLAF LP

Period: 01-Dec-2015 to 31-Dec-2015

| INVESTMENT DESCRIPTION / IDENTIFIER | TRADE DATE / POSTING DATE | SETTLE DATE | TRANS ID / TRANS TYPE | QUANTITY | TRADE PRICE | NET AMOUNT | RUNNING BALANCE SETTLE CCY | REPORTING CCY (USD) |
|---|---|---|---|---|---|---|---|---|
| **MLAF LP (1082751S - D)** | | | | | | | | |
| **ACTIVITY** | | | | | | | | |
| **EUR (EUR/USD = 1.086550)** | | | | | | | | |
| EURO | 14-Dec-2015 / 14-Dec-2015 | 14-Dec-2015 | 591943179 / Deposit / Withdrawal | 0 | 0 | (2,187,369.00) | 2,573,295.58 | 2,796,014.31 |
| EUR | 14-Dec-2015 / 14-Dec-2015 | 16-Dec-2015 | 1513295667 / FX Leg - Spot | 0 | 1.10182 | 2,187,369.00 | 4,760,664.58 | 5,172,700.10 |
| Buy EUR 2187369; Sell USD 241086.91 @ 1.101820 | | | | | | | | |
| CASINO GUICHARD PERRACHO 07FEB25 2.33PCT BTC2K87 | 15-Dec-2015 / 16-Dec-2015 | 17-Dec-2015 | Y1742697373829 / Sell Short | (4,000,000) | 89.7981 | 3,591,922.19 | 8,352,586.77 | 9,075,503.15 |
| CASINO GUICHARD PERRACHO 07FEB25 2.33PCT BTC2K87 | 15-Dec-2015 / 17-Dec-2015 | 17-Dec-2015 | 121009007 / Sell Short | (4,000,000) | 87.8 | 3,591,922.19 | 11,944,508.96 | 12,978,306.21 |
| CASINO GUICHARD PERRACHO 07FEB25 2.33PCT BTC2K87 | 15-Dec-2015 / 17-Dec-2015 | 17-Dec-2015 | Y1742697373829 / Sell Short | 4,000,000 | 89.7981 | (3,591,922.19) | 8,352,586.77 | 9,075,503.15 |
| CASINO GUICHARD PERRACHO 07MAR24 3.248PCT BKKNHX0 | 15-Dec-2015 / 16-Dec-2015 | 17-Dec-2015 | Y1727505491816 / Sell Short | (5,000,000) | 99.2792 | 4,963,959.02 | 13,316,545.79 | 14,469,092.83 |
| CASINO GUICHARD PERRACHO 07MAR24 3.248PCT BKKNHX0 | 15-Dec-2015 / 16-Dec-2015 | 17-Dec-2015 | Y1798322727560 / Sell Short | (3,000,000) | 99.2792 | 2,978,375.41 | 16,294,921.20 | 17,705,246.63 |
| CASINO GUICHARD PERRACHO 07MAR24 3.248PCT BKKNHX0 | 15-Dec-2015 / 16-Dec-2015 | 17-Dec-2015 | Y1727506703196 / Sell Short | (5,000,000) | 99.2792 | 4,963,959.02 | 21,258,880.22 | 23,098,836.30 |
| CASINO GUICHARD PERRACHO 07MAR24 3.248PCT BKKNHX0 | 15-Dec-2015 / 17-Dec-2015 | 17-Dec-2015 | Y1727505491816 / Sell Short | 5,000,000 | 99.2792 | (4,963,959.02) | 16,294,921.20 | 17,705,246.63 |
| CASINO GUICHARD PERRACHO 07MAR24 3.248PCT BKKNHX0 | 15-Dec-2015 / 17-Dec-2015 | 17-Dec-2015 | 121009005 / Sell Short | (5,000,000) | 96.75 | 4,963,959.02 | 21,258,880.22 | 23,098,836.30 |
| CASINO GUICHARD PERRACHO 07MAR24 3.248PCT BKKNHX0 | 15-Dec-2015 / 17-Dec-2015 | 17-Dec-2015 | 121009004 / Sell Short | (3,000,000) | 96.75 | 2,978,375.41 | 24,237,255.63 | 26,334,990.10 |
| CASINO GUICHARD PERRACHO 07MAR24 3.248PCT BKKNHX0 | 15-Dec-2015 / 17-Dec-2015 | 17-Dec-2015 | 121009006 / Sell Short | (5,000,000) | 96.75 | 4,963,959.02 | 29,201,214.65 | 31,728,579.78 |

See disclaimer on the last page of the report for important legal information regarding the reliability of this data.

Processed: 14-Jan-2016 07:40 PM EST
Page 3 of 10

Global Prime Brokerage



**Bank of America**
**Merrill Lynch**

# MTD POSTED CASH ACTIVITY

**Beneficial Owner: MLAF LP**

Period: 01-Dec-2015 to 31-Dec-2015

**DISCLAIMER:**

This is intended solely for the use of the intended recipient(s) and may contain information that is privileged, confidential or proprietary. If you are not an intended recipient, please notify the sender, and then please delete and destroy all copies and attachments, and be advised that any review or dissemination of, or the taking of any action in reliance on, the information contained in or attached to this message is prohibited.

The attached link shows additional disclaimer information

**Report Description -** This report details the daily posting date activity, grouped by currency, which impacts cash balances. The unadjusted opening, adjusted opening, closing and running balances are provided. The report is based on original posting date. Trades that were posted for trade dates in the reporting period are grouped under "New Activity". Trades posted for trade dates prior to the reporting date are included in the "As of Activity" section.

Below are the parameter values that affect the content and presentation for this report

| Parameter Name | Parameter Value |
|---|---|
| Consolidation Level: | ACCOUNT |
| Report Level: | MLAF LP (212738407) |
| Preferred Product ID: | US GLOBAL |
| Period Range: | 01-Dec-2015 to 31-Dec-2015 |
| Knowledge Date: | 14-Jan-2016 07:40 PM EST |
| Cash Convention: | US |
| Date Basis: | TRADE DATE |
| Reporting Currency: | USD |
| Suppress Cancel Flag: | SAME DAY CANCELS |

**Accounts Within Group**

| | | | |
|---|---|---|---|
| 10827515 | MLAF LP | 10827315 | MLAF LP-US TRADING |
| MLAF_BANA | MUDDY WATERS CAPITAL LLC O/B/O MLAF LP A/C BANA SWAP | 10829802 | MLAF LP-BANA SWAP COLLATERAL DERIV |
| MLAFSWAP | MLAF LP  MLI SWAP | 10829515 | MLAF LP  BANA SWAP |
| MLAF_MLI | MUDDY WATERS CAPITAL LLC O/B/O MLAF LP A/C MLI SWAP | 10829315 | MLAF LP-BANA SWAP US TRADING |

# Exhibit B

**(Order of USMJ Sallie Kim, dated June 4, 2019, in**
***Muddy Waters Capital LLC v. John Does 1-10*, 19 Civ.**
**1293 (N.D. Cal. 2019))**

JORDAN FLETCHER (admitted *pro hac vice*)
**FLETCHER LAW, PLLC**
154 Grand Street
New York, New York 10013
Tel: (212) 320-8945
Fax: (347) 983-0046
Email: jordan@fletcherlaw.co

MARK R. CONRAD (CA Bar No. 255667)
GABRIELA KIPNIS (CA Bar No. 284965)
**CONRAD & METLITZKY LLP**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel:     (415) 343-7100
Fax:     (415) 343-7101
Email: mconrad@conradmetlitzky.com
Email: gkipnis@conradmetlitzky.com

Attorneys for Plaintiff MUDDY WATERS CAPITAL LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUDDY WATERS CAPITAL LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, | Case No. 3:19-cv-01293 |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S *EX PARTE* MOTION FOR EXPEDITED LIMITED DISCOVERY; ORDER CONTINUING CASE MANAGEMENT CONFERENCE** |
| JOHN DOES 1-10, | |
| Defendants. | |

Having considered Plaintiff Muddy Waters Capital LLC's *Ex Parte* Motion for Expedited Limited Discovery ("Motion"), and good cause appearing therefore:

IT IS HEREBY ORDERED that:

1.  The Motion is <u>granted</u>; and

2.  Plaintiff may serve a Federal Rule 45 subpoena upon third parties Merrill Lynch Professional Clearing Corp., and certain entities affiliated with Merrill Lynch Professional Clearing Corp. and owned or controlled by Bank of America, N.A., substantially in the form of the proposed subpoena attached to this Order as Exhibit 1.

The Court FURTHER ORDERS that the case management conference scheduled for June 10, 2019 is CONTINUED to August 19, 2019. A case management statement is due by August 12, 2019.

**IT SO ORDERED.**

DATED: June 4, 2019

_____
Hon. Sallie Kim, U.S.M.J.

Order Granting *Ex Parte* Motion for Expedited Limited Discovery                    Case No. 3:19-cv-01293

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
### Northern District of California

| | | |
|---|---|---|
| Muddy Waters Capital LLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   3:19-cv-1293 |
| John Does 1-10 | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:               Bank of America Corporation
       c/o Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Ex. A

| Place:  Fletcher Law, PLLC, 154 Grand Street, New York, NY 10013; (212) 320-8945; jordan@fletcherlaw.co | Date and Time: Within 30 days of service or at such other time and place agreed upon by you and counsel for the requesting party |
|---|---|

The deposition will be recorded by this method:   Stenography and/or video

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Exhibits A & B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     10/1/2019

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Muddy Waters Capital LLC
                                                                    , who issues or requests this subpoena, are:
Jordan Fletcher, Fletcher Law, PLLC, 154 Grand Street, New York, NY 10013; (212) 320-8945; jordan@fletcherlaw.co

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

The following definitions, which include and incorporate by reference the definitions required by Fed. R. Civ. P. 34(a), are applicable to these requests.

## DEFINITIONS

1. **Plaintiff**. The term "Plaintiff" means the plaintiff in this action, Muddy Waters Capital LLC and its client/advisee/assignee MLAF, LP ("MLAF").

2. **You**. The term "You" means Bank of America Corporation and any and all related entities collectively defined as the "BofAML Entities" in a certain Prime Brokerage Account Agreement dated November 4, 2015 between and among MLAF and Plaintiff, on the one hand, and You, on the other.

3. **Prime Brokerage Agreement**. The term "Prime Brokerage Agreement" means that certain Prime Brokerage Account Agreement dated November 4, 2015 between and among MLAF and Plaintiff, on the one hand, and You, on the other.

4. **December 15 Transactions**. The term "December 15 Trades" means certain short sale securities transactions involving bonds of French retailer Casino Guichard-Perrachon, S.A. that were arranged, facilitated, and/or executed on Plaintiff's and MLAF's behalf by You pursuant to the Prime Brokerage Agreement on or about December 15, 2015, and which have been referenced, in part, in account statements provided by You to Plaintiff, using the following transaction IDs/information:

      a.      CASP 3.580 02/07/25 '24 MTN: Trans ID 20402477

      b.      CASP 4.498 03/07/24 '23 MTN: Trans ID 20402475

      c.      CASP 4.498 03/07/24 '23 MTN: Trans ID 20402476

      d.      CASP 4.498 03/07/24 '23 MTN: Trans ID 20402478

5.    **Shorted Casino Bonds**. The term "Shorted Casino Bonds" means the specific securities that were sold by Plaintiff in the December 15 Transactions.

6.    **Communication**.  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

7.    **Document.**  "Document" means any written, recorded, or graphic material of any kind, whether prepared by you or by any other person, that is in your possession, custody, or control. The term includes agreements; contracts; letters; telegrams; inter-office communications; memoranda; reports; records; instructions; specifications; notes; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; electronic-mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs.  A draft or non-identical copy is a separate document within the meaning of this term.

The term "document" **also includes electronically stored information ("ESI")** on operational systems including accounting, financial, distribution, or manufacturing systems; **E-mail; Instant Messages (IM); Web pages; text messages; cell phone data; Excel spreadsheets and underlying formulae; metadata**; computer databases (i.e., Access); erased, fragmented or damaged data; Blackberry data; and anything stored on computer or other electronic means located on or in, but not limited to cache memory; optical disks; magnetic tapes/back-up tapes; magnetic disks (hard drive, floppy disks, etc.); PDAs, Blackberries and Palm Pilots; cell phones; IM tools; or USB drives. Any such document is to be produced in a reasonably legible and usable form.

Without limitation on the term "control" as used herein, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person.

8.    **Tangible Things**.  The term "tangible things" means corporal items or property, perceptible to the senses.

9.    **Identify (with respect to persons)**.  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

10.    **Identify (with respect to business entities)**.  When used with reference to an entity such as a partnership, joint venture, trust, limited liability company, or corporation, "to identify" means to give, to the extent known the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's email address and telephone number, the identity of the chief operating officer, manager, trustee or other principal or representative and the identity of those persons employed by or otherwise acting for such entity who are known or believed to possess the knowledge or information responsive to the interrogatory for which the entity was identified.

11.    **Identify (with respect to documents)**.  When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).   In the alternative, the

responding party may produce the documents and state the Bates stamp production numbers of such documents.

12. **Parties**. The terms "plaintiff" and "defendants" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

13. **Person**. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

14. **Concerning**. The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

15. **All/Any/Each**. The terms "all," any," and "each" shall each be construed as encompassing any and all.

16. **And/Or**. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

17. **Number**. The use of the singular form of any word includes the plural and vice versa.

18. **Time Period of Requests**. Unless otherwise noted, the requests herein shall be limited to the time period of December 1, 2015 through the present.

<u>**REQUESTS FOR PRODUCTION**</u>

<u>**Request No. 1**</u>

Provide all documents and communications concerning or reflecting the identity – including but not limited to name, address, email address, and telephone contact information, and

4

any identifying account numbers or information – of any parties, including third parties, who, whether on their own behalf or on behalf of others, (a) placed bids to purchase the Shorted Casino Bonds from Plaintiff or You, or (b) purchased Shorted Casino Bonds from Plaintiff or You, in connection with the December 15 Transactions.

**Request No. 2**

To the extent not produced in response to the above request, identify all individual representatives of third parties with whom any of Your employees, agents, and/or representatives communicated concerning (a) bids placed by such third parties to purchase the Shorted Casino Bonds from Plaintiff or You, or (b) the purchase of Shorted Casino Bonds from Plaintiff or You, in connection with the December 15 Transactions.

**Request No. 3**

To the extent not produced in response to the above request, identify all of Your employees, agents, and representatives who (a) arranged or executed trades, or (b) communicated with third parties, in connection with the December 15 Transactions.

**Request No. 4**

To the extent not produced in response to the above request, provide all documents and communications reflecting transaction records concerning Your acquisition or reservation of the Shorted Casino Bonds for Plaintiff's use in the December 15 Transactions.

**Request No. 5**

To the extent not produced in response to the above requests, provide all documents and communications reflecting transaction records concerning the sale – by Plaintiff, You, or any third

party – of the Shorted Casino Bonds in the December 15 Transactions.

**Request No. 6**

To the extent not produced in response to the above requests, provide all documents and communications reflecting communications – whether exclusively within/among Yourself, or between/among You and any third parties – concerning the Shorted Casino Bonds or the December 15 Transactions.

# Exhibit B

### Protocol for Production of Documents
### and Electronically Stored Information

**A.**   **Scope**

1.  The procedures set forth in this Protocol shall govern the production of responsive documents in this litigation.  Any practice or procedure set forth herein may be varied by written agreement of the parties.

2.  The parties shall confer and attempt to reach agreement on:

    a.  The custodians to be searched for responsive documents;
    b.  The sources that the producing party deems to be not reasonably accessible within the meaning of FRCP 26(b)(2)(B);
    c.  The search terms that will be used to identify responsive documents;
    d.  The temporal scope of any search for responsive documents; and
    e.  The form and content of privilege logs.

3.  The terms of any applicable protective order or FRE 502(d), (e) order filed with the Court governing the inadvertent production of privileged information also govern all production pursuant to this Protocol.

4.  The parties shall meet and confer to resolve any disputes that arise under this Protocol.  It shall be the obligation of the producing party to initiate timely and good faith discussions and negotiations regarding any provision or requirement of this Protocol that might operate to delay that party's production or responses to pending discovery requests.  In the event that the parties cannot reach agreement on a disputed matter, the parties shall submit the matter to the Court.

**B.**   **Production Format**

5.  "Information items" as used here encompass individual documents and records (including associated metadata) whether on paper or film, as discrete "files" stored electronically, optically or magnetically or as a record within a database or container file.  The term should be read broadly to include e-mail, messaging, word processed documents, digital presentations and spreadsheets.

6.  Unstructured Data

    a.  E-mail and Other Electronically Created Files: Information items derived from e-mail and other electronically created files (*e.g.*, MS Office or WordPerfect) shall, except where otherwise specified, be produced as Bates-labeled single-page/multi-page Group IV TIFF images with image resolution at least 300 dpi. If providing color images, please provide .JPG images with a resolution of 150 to 300 DPI. Original

document orientation shall be retained.

     i. For E-mail, lesser-included communications comprising an E-mail chain need not be produced in addition to the chain.

    ii. Upon a showing of need, a producing party shall make a reasonable effort to locate and produce the native counterpart(s) of any document produced.  The parties agree to meet and confer regarding production of any such documents.

b. <u>Non-Paginated Documents</u>: Documents without standard pagination and maintained electronically – such as spreadsheets (*e.g.*, MS Excel), desktop databases (such as Microsoft Access), and audio/video files – shall be produced in native or near-native[1] format, along with a Bates-labeled placeholder image in TIFF format. Databases may be exported to MS Excel and produced accordingly. The Parties will make reasonable efforts to ensure that documents produced in native form are decrypted (or that passwords are supplied). **\*\*\*An Adobe PDF file is not considered a native file unless the document was initially created as a PDF.**

     i. To the extent that documents produced pursuant to this Protocol cannot be rendered or viewed without the use of proprietary third-party software, the parties shall meet and confer to minimize any expense or burden associated with the production and examination of such documents in an acceptable format, including issues with respect to obtaining access to any such software and operating manuals which are the property of a third party.

c. <u>Web Pages and Social Media Information</u>: Web pages, social media data and other information not otherwise covered in subparts B(6)(a) or (b) above shall be produced as "screen shots" or "screen captures" unless the Parties agree to perform bulk exports of entire websites and social media accounts into native format.

d. <u>Full Text Extraction / OCR</u>: The full content of each document will be extracted directly from the native source where feasible or, where infeasible, by optical character recognition (OCR) or other suitable method to a searchable text file produced with the corresponding page image(s) or embedded within the image file. However, the parties agree that where original paper documents contain handwritten notes or markings, text extraction by OCR or otherwise may not be feasible with respect to such content.  Redactions shall be logged along with other items withheld on claims of privilege.

---

1. If it is infeasible to produce an item of responsive ESI in its native form, it may be produced in an agreed-upon near-native form; that is, in a form in which the item can be imported into the native application without a material loss of content, structure or functionality as compared to the native form.  Static image production formats serve as near-native alternatives only for information items that are natively static images (*i.e.*, photographs and scans of hard-copy documents).

e. <u>Metadata Format</u>: The Producing Party shall furnish a delimited load file supplying the metadata filed values listed below for each information item produced (to the extent the values exist and as applicable):

| Field | Description |
|---|---|
| Beg Bates | First Bates identifier of item |
| End Bates | Last Bates identifier of item |
| Page Count | Total number of pages in the document |
| BeginAttach | First Bates identifier of attachment range |
| EndAttach | Last Bates identifier of attachment range |
| Parent Bates | First Bates identifier of parent document/e-mail message. **This Parent_Bates field should be populated in each record representing an attachment "child" document.** |
| Child Bates | First Bates identifier of "child" attachment(s); may be more than one Bates number listed depending on number of attachments. |
| Confidential Designation | Denotes that item has been designated as confidential pursuant to protective order (yes/no). |
| Custodian | Name of Custodian of the file(s) produced – Last Name, First Name format |
| File Name | Filename of the original digital file name |
| Native Link | Path and filename to produced Native file |
| Path | E-mail: Original location of e-mail including original file name. Native: Path where native file document was stored including original file name. |
| Email Subject | Subject line extracted from an email message |
| Title | Title field extracted from the metadata of a non-email document |
| Author(s) | Author field extracted from the metadata of a non-email document |
| From | From field extracted from an email message |
| To | To or Recipient field extracted from an email message |
| Cc | CC or Carbon Copy field extracted from an email message |
| BCC | BCC or Blind Carbon Copy field extracted from an email message |
| Date Sent | E-mail: Date the email was sent |
| Time Sent | E-mail: Time the message was sent |
| Date Received | E-mail: Date the email was received |
| IntMsgID | E-mail: For e-mail in Microsoft Outlook/Exchange, the "Unique Message ID" field; For e-mail in Lotus Notes, the UNID field. Native: empty. |
| Date Created | Date that a file was created |
| Date Modified | Modification date(s) of a non-email document |
| Time Modified | Modification time(s) of a non-email document |

| File Type | File type of a non-email document |
|---|---|
| Redacted | Denotes that item has been redacted as containing privileged content (yes/no). |
| File Size | Size of native file document/email in KB. |
| Hidden Content | Denotes presence of hidden Content/Embedded Objects in item(s) (yes/no) |
| Fingerprint | MD5 Hash or SHA-1 Hash value of the item. |
| Production Volume | Identifies production media deliverable |
| Extracted Text | File path to Extracted Text/OCR File |
| DeDuped | Full path of other instances de-deduplicated by MD5 hash **semi-colons separate multiple entries ** |

 f. <u>Load File Format</u>: Load files produced shall conform to the following specifications:
  i. <u>Images Load File</u>: Opticon OPT file, which includes the following:

```
00000,SAMPLE,D:\Sample_Data\VOL001\Images\000001.jpg,Y,,,1
000002,SAMPLE,D:\Sample_Data\VOL001\Images\000002.tif,Y,,,1
000003,SAMPLE,D:\Sample_Data\VOL001\Images\000003.jpg,Y,,,1
000004,SAMPLE,D:\Sample_Data\VOL001\Images\000004.tif,Y,,,3
000005,SAMPLE,D:\Sample_Data\VOL001\Images\000005.tif,,,,
000006,SAMPLE,D:\Sample_Data\VOL001\Images\000006.tif,,,,
```

  ii. <u>Metadata Load File</u>:  Concordance DAT file with field header information added as the first line of the file. Export using Concordance default delimiters.
  iii. <u>Extracted TEXT</u>**:**  Reference File Path to TEXT file in DAT file
  iv. <u>Native Files Produced</u>**:**  Reference File Path to Native file in DAT file

7. <u>Structured Data</u>: Absent a showing of need, a party shall produce responsive information reports contained in databases through the use of standard reports, that is, reports that can be generated in the ordinary course of business and without specialized programming efforts beyond those necessary to generate standard reports.  All such reports shall be produced in a delimited electronic format preserving field and record structures and names.

8. <u>Electronic Phone Records</u>: When producing electronic phone records, provide the files in the following format:

 a. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).  The metadata provided must include:

  i. For Text messages: (1) Connection Date, (2) Connection Time, (3) Originating Number, (4) Terminating Number, (5) Time Zone.

      ii.  For Calls: (1) Connection Date, (2) Connection Time, (3) Originating Number, (4) Terminating Number, (5) Elapsed Time, (6) End Time, (7) Number Dialed (actual number dialed), (8) Time Zone.

9.  <u>Paper Documents</u>: Paper documents may be converted to electronic format as described in subparts B(6)(a) or (b) above. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly.

    a.  Metadata fields provided with electronic versions of paper documents shall include:

| Field | Description |
|---|---|
| Beg Bates | First Bates identifier of item |
| End Bates | Last Bates identifier of item |
| Page Count | Total number of pages in the document |
| BeginAttach | First Bates identifier of attachment range |
| EndAttach | Last Bates identifier of attachment range |
| Custodian | Name of Custodian of the file(s) produced – Last Name, First Name format |
| Production Volume | Identifies production media deliverable |

10.  <u>De-duplication</u>: The Producing Party is only required to produce a single copy of a responsive document.

    a.  Parties may de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash value matching. ESI that is not an exact duplicate may not be removed.

    b.  Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced.

    c.  Attachments to e-mails shall not be eliminated from the parent e-mail.

    d.  Paper documents shall not be eliminated as duplicates of responsive ESI. If a party de-duplicates stand-alone electronic documents against an e-mail attachment, the attachment to the e-mail must be the document that is produced.

**C.**    **Processing Specifications**

11.  <u>Deliverables</u>: Productions should be made on CD, DVD, or hard drive(s) using the

medium requiring the least number of deliverables.  Upon agreement and feasibility, production may also be made via secure download link.  Label all media with the case number, production date, Bates range and disk number (1 of X, if applicable).  Organize productions by custodian, unless otherwise instructed.  All documents from an individual custodian should be confined to a single load file.  All productions should be encrypted for transmission to the receiving party.  The producing party shall, contemporaneously with production, supply decryption credentials and passwords to the receiving party for all items produced in an encrypted or password protected form.

12. Bates Numbering: Each information item produced shall be identified by naming the item to correspond to a Bates identifier according to the following protocol:

   a. The first four (4) characters of the filename will reflect a unique alphanumeric designation identifying the party making production, and the next six (6) characters will be a unique, consecutive numeric value assigned to the item by the producing party. This value shall be padded with leading zeroes as needed to preserve its length. Thus, by way of example, a Microsoft Word document produced by Acme might be named: ACME000123.docx.

   b. Bates identifiers should be endorsed on the lower right corner of all printed pages, but not so as to obscure content.

   c. This format of the Bates identifier must remain consistent across all productions. The number of digits in the numeric portion and characters in the alphanumeric portion of the identifier should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted except as set out above.

   d. Confidential Designation: Any information items designated Confidential shall bear the protective legend on each page in a clear and conspicuous manner, but not so as to obscure content. In the case of all native or near-native documents produced, such designation shall be place on the corresponding TIFF placeholder and shall also be reflected in the accompanying metadata load file.