# **EXHIBIT Q**

1997

*The State of Minnesota v. Philip Morris Inc.*

English Court of Appeal

THE STATE OF MINNESOTA AND BLUE CROSS AND BLUE SHIELD OF MINNESOTA *v.* PHILIP MORRIS INCORPORATED AND OTHERS

BEFORE THE ENGLISH COURT OF APPEAL

(Lord Woolf M.R., Peter Gibson, Otton L.JJ.)

30 July 1997

On appeal from the High Court, Queen's Bench Division (Owen J.)*

**Evidence (Proceedings in Other Jurisdictions) Act 1975. Letters of Request. Requirements.** The approach of this court will be to seek to assist a foreign court wherever it is appropriate. For that reason the courts will seek to give effect to a Letter of Request wherever this is practical. Comity between jurisdictions demands no different an approach. The court of request should not be astute to examine the issues in the action and the circumstances of the case with excessive particularity for the purpose of determining in advance whether the evidence of that person will be relevant and admissible. That is essentially a matter for the requesting court. When the court has to choose between either giving effect to a Letter of Request or refusing to do so, it will take into account any limitations, corrections or conditions which the party seeking the order is willing for the court to take into account. It will, if appropriate, be prepared to give the request an amended effect. However, notwithstanding that, it is important to bear in mind that fishing cannot be permitted as part of a request. Furthermore, because of the need to hold the balance between the requesting court and the witnesses who are to be examined, if the request is given effect, the court will not allow uncertain, vague or other objectionable requests to be implemented. A witness is entitled to know within reasonable limits the matters about which he or she is to be examined. Although there is the possibility of matters coming back to the court for further rulings, in general the court has to take into account that once it makes an order it ceases to have any control of the examination. [17]–[18], [71]

The plaintiffs had brought proceedings in Minnesota against the defendant cigarette manufacturers. The claim was based on the healthcare costs that had been incurred in the treatment of smokers. The basis of the claim against the defendants was that they had

---

* The judgment of Owen J., dated 8 July 1997, is reported in this issue at p. 159.

conspired to conceal from the public the addictive and dangerous effects of cigarettes. In the course of the Minnesota proceedings it was sought to obtain evidence in the form of oral depositions from certain former officers of the defendant companies who were resident in England. Originally the evidence was sought on the basis of the Minnesota Rules of Civil Procedure on the assumption that the officers were within the control of the defendants, and subject to the jurisdiction of the Minnesota courts. When it emerged that some of them were no longer under the control of the defendants, the evidence was sought by means of a Letter of Request addressed to the English courts. The witnesses in question objected to providing evidence in accordance with the letter of request, arguing that it sought American-style discovery, that it constituted a fishing expedition, and that it was too vague and uncertain in its delimitation of the matters on which depositions were sought.

At first instance, Owen J. concluded that he could give effect to the Letter of Request by imposing a number of limitations on the matters on which evidence could be sought and the way in which the evidence taking procedure should be conducted. On appeal, however, the Court of Appeal reluctantly took the view that the request lacked adequate specificity and that it could not be made acceptable without a degree of redrafting which it was inappropriate for the requested court to undertake. The request was therefore rejected with a view to its being remitted to the court in the State of origin for redrafting in the light of the comments of the English court.

1997

*The State of Minnesota*

v.

*Philip Morris Inc.*

English Court of Appeal

*Judgment* (Lord Woolf M.R.)

> *Stanley Burnton Q.C.*, instructed by *Herbert Smith*, appeared for the appellant.
> *John Cherry Q.C.* and *Martin Seaward*, instructed by *Thompsons*, appeared for the respondents.

The following cases were referred to in the judgment:

*English courts*
1. RIO TINTO ZINC CORPORATION *v.* WESTINGHOUSE ELECTRIC CORPORATION [1978] A.C. 547.
2. STATE OF NORWAY'S APPLICATION (NO. 1), RE [1987] 1 Q.B. 433.
3. RADIO CORPORATION OF AMERICA *v.* RAULAND CORPORATION [1956] 1 Q.B. 618.

## JUDGMENT

LORD WOOLF M.R.: [1] This is an appeal from a judgment of Owen J., given on 8 July 1997. He ordered four witnesses to attend to give evidence before an examiner pursuant to a Letter of Request of the Honourable Kenneth J. Fitzpatrick, a judge of the District Court in the State of Minnesota.

[2] The judge has the heavy responsibility of managing, and trying, an action between the State of Minnesota, by its Attorney General, and Blue Cross and Blue Shield of Minnesota against a variety of

1997

*The State of Minnesota*
v.
*Philip Morris Inc.*

English Court of Appeal

*Judgment*
(Lord Woolf M.R.)

Tobacco companies, including the British-American Tobacco Companies and the associated companies of British-American Tobacco.

[3] The claim is very substantial. If the action succeeds, the damages will obviously be very large indeed. It is hoped that the action will come on for hearing in January next year. In those circumstances, the matter dealt with by Owen J. is urgent and this appeal has therefore been expedited. Having heard very helpful argument from leading counsel on both sides yesterday, we give judgment this morning in order to reduce any delay to a minimum.

[4] The claims, of which we have been provided with copies, are very wide-ranging. They include claims for conspiracy. Owen J. in his judgment, cited from the plaintiffs' skeleton argument which described the claims as:

> Including penal damages and other relief ... and based upon enormous cost to the plaintiffs of the care of a large number of people caused by the inhalation of cigarette smoke and the insinuation of nicotine and other substances into their bodies as a result of the deliberate and allegedly unlawful acts of the defendants in conspiring to conceal from the public, by deceit and misrepresentation and suppression, the results of research, the fact that nicotine is addictive and that cigarettes, when used as intended by the defendants, are lethal.
>
> It is further the plaintiffs' case that the defendants, for profit, particularly targeted children and deliberately suppressed the development of a safer cigarette.

[5] The English companies deny that they are amenable to the jurisdiction of the Minnesota court. They also deny knowledge of matters alleged against them and any form of liability.

[6] The witnesses, who are the subject of Owen J.'s order, all held high office at different times in the British-American Tobacco group of companies. Owen J.'s order was made under the provisions of the Evidence (Proceedings in Other Jurisdictions) Act 1975. That Act was, in part, to implement the Hague Evidence Convention of 1970. It is necessary to refer to some of the provisions of the Act because they were the centre of submissions which were advanced. Section 1 of the Act, so far as relevant, reads:

> Where an application is made to the High Court ... for an order for **evidence** to be obtained in the part of the United Kingdom in which it exercises jurisdiction, and the court is satisfied:
>
> (a) that the application is made in pursuance of a request issued by or on behalf of a court or tribunal ('the requesting court') exercising jurisdiction in any other part of the United Kingdom or in a country or territory outside the United Kingdom; and
> (b) that the evidence to which the application relates is to be obtained for the purposes of civil proceedings which either have been

instituted before the requesting court or whose institution before that court is contemplated,

the High Court ... shall have the powers conferred on it by the following provisions of this Act.

[7] Mr Burnton Q.C., on behalf of the witnesses, draws attention to the use in section 1 of the word "evidence". Section 2 deals with the power of the United Kingdom court to give effect to an application for assistance. It provides:

Subject to the provisions of this section the High Court ... shall each have power, on any such application as is mentioned in section 1 above, by order to make such provision for obtaining **evidence** in the part of the United Kingdom in which it exercises jurisdiction as may appear to the court to be appropriate for the purpose of giving effect to the request in pursuance of which the application is made.

[8] I draw attention to the fact that it is the English court "giving effect to the request" which is of significance. I then draw attention to subsection (3) which provides:

An order under this section shall not require any particular steps to be taken unless they are steps which can be required to be taken by way of obtaining **evidence** for the purposes of civil proceedings in the court making the order [the English court]; but this subsection shall not preclude the making of an order requiring a person to give testimony (either orally or in writing) otherwise than on oath where this is asked for by the requesting court.

[9] In case of RIO TINTO ZINC CORPORATION v. WESTINGHOUSE ELECTRIC CORPORATION,[1] Lord Diplock emphasised that subsection (3) focused on the fact that the legislation in section 2(3) is confined to "direct evidence" for the hearing. In addition to the provisions to which I have already referred, section 3 contains protections for the privilege of witnesses. The Act is implemented, from a procedural point of view, by RSC, Ord. 39. For present purposes it is sufficient if I refer to Ord. 39, r. 5, which provides:

If any person, having been duly summoned by writ of subpoena to attend before the examiner, refuses or fails to attend or refuses to be sworn for the purpose of the examination or to answer any lawful question or produce any document therein, a certificate of his refusal or failure, signed by the examiner, must be filed in the District Registry (if any) in which the cause or matter is proceeding and otherwise in the Central Office, and upon the filing of the certificate the party by whom the attendance of that person was required may apply to the Court for an order requiring that person to attend, or to be sworn or to answer any question or produce any document, as the case may be.

This rule indicates that the order can be enforced against a witness who refuses to co-operate as a result of the process described in the rule.

[10] Rule 8 deals with the conduct of the examination. Rule 8(2) provides that:

1997
—
*The State of Minnesota*
v.
*Philip Morris Inc.*
—
English Court of Appeal
—
*Judgment* (Lord Woolf M.R.)

---

[1] [1978] A.C. 547.

174 INTERNATIONAL LITIGATION PROCEDURE

*1997*

*The State of Minnesota v. Philip Morris Inc.*

English Court of Appeal

*Judgment* (Lord Woolf M.R.)

The examiner may put any question to any person examined before him as to the meaning of any answer made by that person or as to any matter arising in the course of the examination.

[11] Rule 10 deals with objections. It is important to note under that rule that, in respect of an objection, the examiner is required:

> ... to state to the parties his opinion thereon, and the statement of his opinion must be set out in the deposition or in a statement annexed thereto.

If an objection is taken, the deposition records the objection (the examiner's opinion) which will be transmitted to the requesting court. Ord. 70, r. 6 deals generally with the ability to claim privilege.

[12] If a witness refuses to answer and the procedure indicated is followed, then it seems to me that that would provide this court with an opportunity to determine whether or not the witness was justified in refusing to answer. If, for example, questions were put to a witness, which were outside the purposes permitted by the Act or by the order made by the court, protection can be provided to the witness as a matter of sensible practice. If such difficulties arise, it would be desirable for the examiner, where appropriate, to continue to the end of the examination in order that all the objections which are made to answering any question might be considered by the court, if necessary.

[13] The difficulty in the present case, as in previous cases, arises because of the difference in approach to discovery in this country and the United States. Their discovery procedures are not necessarily the same in all States. But in general in the United States there is a tradition of oral discovery which has never been developed in this country. Rightly or wrongly, we regard oral discovery as a form of discovery which generates unnecessary costs and complexity. There is another difference between the approach to discovery in this country and that in the United States. Generally, there it is possible to get much wider "non party" discovery. That is discovery against those who are not parties to the proceedings.

[14] This is a matter which was alluded to in passages from the speech of Lord Diplock (also by other members of the House), in RE WESTINGHOUSE.[2] Those passages read as follows:

> The difficulty involved in the application of subsection (3) to proceedings in the United States courts lies in the fact that the examination for discovery of witnesses who are not parties to the action serves a dual purpose; the ordinary purpose of discovery with the wide line of inquiry which that permits and also the purpose of obtaining in the form of a deposition evidence from the witness which will be admissible at the trial in the event of the witness not being called in person.
>
> ...
>
> The request for the production of documentary evidence by the two RTZ companies must not only satisfy the requirements of subsection (3) which exclude fishing discovery, but also the stricter requirements of subsection (4). Under the procedure of the High Court of England there is

---

[2] Cited above, at p. 635.

no power to order discovery of documents by a person not a party to the action, but such a person can be required by subpoena *duces tecum* to produce documents to the court or, where his evidence is taken before an examiner prior to the trial, at such examination.

[15] The approach to discovery in jurisdictions such as the United States is sometimes categorised unattractively, and perhaps inappropriately, as "fishing" where advocates wish to prevent courts in this country making orders. The meaning of the allegation that an application is a "fishing" application is well-known to practitioners, but is difficult to put into words which adequately describe it. In this jurisdiction it is certainly not limited to cases where there are applications of the sort being considered here. However, in a case which did involve similar issues to those at present under consideration, the question of what constitutes "fishing" was considered by Kerr L.J. in RE STATE OF NORWAY'S APPLICATION (NO. 1).[3] He said[4]:

> Although 'fishing' has become a term of art for the purposes of many of our procedural rules dealing with applications for particulars of pleadings, interrogatories and discovery, illustrations of the concept are more easily recognised than defined. It arises in cases where what is sought is not evidence as such, but information which may lead to a line of inquiry which would disclose evidence. It is the search for material in the hope of being able to raise allegations of fact, as opposed to the elicitation of evidence to support allegations of fact, which have been raised bona fide with adequate particularisation. In the present context fishing may occur in two ways. First, the 'evidence' may be sought for a preliminary purpose, such as the process of pre-trial discovery in the United States. The fact that this is clearly impermissible for the purposes of the Act of 1975 is established in the WESTINGHOUSE case [1978] A.C. 547, and was equally so held by this court in relation to the Foreign Tribunals Evidence Act 1856 in RADIO CORPORATION OF AMERICA *v.* RAULAND CORPORATION [1956] 1 Q.B. 618. This is irrelevant in the present context, since the 'evidence' is required for the trial itself. But fishing is in my view also relevant in another sense in the present context, as McNeill J. rightly indicated. It is perhaps best described as a roving inquiry, by means of the examination and cross-examination of witnesses, which is not designed to establish by means of their evidence allegations of fact which have been raised bona fide with adequate particulars, but to obtain information which may lead to obtaining evidence in general support of a party's case.

[16] If a court comes to the conclusion in this jurisdiction that an application is a fishing application, then the application will be refused. If, in relation to a request of a court in a foreign jurisdiction, the conclusion of the court is that an application is fishing, then that has a more significant effect. In my judgment, the consequence is that the court does not have the power under the 1975 Act to make an order. It may be that, by curtailing the request the order can be cured. I express no final conclusion but I do regard this general position as a matter of some significance. Its signifance becomes apparent from a helpful

1997
—
The State of Minnesota
v.
Philip Morris Inc.
—
English Court of Appeal
—
Judgment (Lord Woolf M.R.)

---

[3] [1987] 1 Q.B. 433.
[4] At p. 482.

1997

*The State of Minnesota v. Philip Morris Inc.*

English Court of Appeal

Judgment (Lord Woolf M.R.)

article written by Mr Lawrence Collins Q.C., which Mr Burnton adopted as part of his argument before us. That article clarifies the position and explains the approach which was adopted by this country in relation to the Hague Convention.

[17] That situation apart, the approach of this court and other courts in this jurisdiction will be to seek to assist a foreign court wherever it is appropriate. For that reason the courts will seek to give effect to a Letter of Request wherever this is practical. Comity between jurisdictions demands no different an approach. It is again a matter which was dealt with in the WESTINGHOUSE case. I refer to the speech of Lord Wilberforce[5] and to the approach of Lord Keith whose words I adopt. He said[6]:

> In the face of a statement in letters rogatory that a certain person is a necessary witness for the applicant, I am of opinion that the court of request should not be astute to examine the issues in the action and the circumstances of the case with excessive particularity for the purpose of determining in advance whether the evidence of that person will be relevant and admissible. That is essentially a matter for the requesting court. Should it appear necessary to apply some safeguard against an excessively wide-ranging examination, that can be achieved by making the order for examination subject to a suitably worded limitation.

[18] Because of the general approach, to which I have drawn attention, when the court has to choose between either giving effect to a Letter of Request or refusing to do so, it will take into account any limitations, corrections or conditions which the party seeking the order is willing for the court to take into account. It will, if appropriate, be prepared to give the request an amended effect. However, notwithstanding that, it is important to bear in mind that fishing still cannot be permitted as part of a request. Furthermore, because of the need to hold the balance between the requesting court and the witnesses who are to be examined, if the request is given effect, the court will not allow uncertain, vague or other objectionable requests to be implemented. A witness is entitled to know within reasonable limits the matters about which he or she is to be examined. Although there is the possibility, to which I have already referred, of matters coming back to the court for further rulings, in general the court has to take into account that once it makes an order it ceases to have any control of the examination.

[19] Owen J. regarded this as a case which was by no means easy to resolve. He took the view that the request lacked "specificity" (his word). He said it was vague, but he also thought that if he imposed a limitation on the order, then he could achieve a situation where it was appropriate to uphold the request. In considering his conclusion, the starting point must be the terms of the Letter of Request.

[20] The Letter of Request starts off by describing the nature of the

---

[5] At p. 612.
[6] At p. 654.

proceedings in the United States in brief terms. It then sets out the representation of the parties and goes on to state in paragraph 3:

> The lawsuit concerns claims made for recovery of health care costs plaintiffs expended resulting from defendants' manufacture, testing and sale of cigarettes and for other monetary and equitable relief. Defendants deny the plaintiffs' claim.

1997

*The State of Minnesota v. Philip Morris Inc.*

English Court of Appeal

*Judgment* (Lord Woolf M.R.)

[21] Paragraph 4 identifies the witnesses and indicates their involvement which explains why they are sought to be examined. It says:

> It is known that Sir Patrick Sheehy, Dr Ray Thornton, Mr Alan Heard and Dr Lionel C. F. Blackman, in their former employment with defendants BAT Industries Plc, British-American Tobacco Company Limited, and/or BAT (UK & Export) Limited may have obtained information regarding: smoking and health issues relating to tobacco and cigarettes; marketing of cigarettes; scientific research related to smoking and health issues; manipulation of nicotine by defendants BAT Industries Plc, British-American Tobacco Company Limited, and/or BAT (UK & Export) or their subsidiaries and affiliated companies including, but not limited to, [1] defendant Brown & Williamson Tobacco Corporation; [2] the exercise of control by defendants BAT Industries Plc, British-American Tobacco Company Limited, and/or BAT (UK & Export) over their subsidiaries and affiliated companies including but not limited to, defendant Brown & Williamson Tobacco Corporation; [3] and the interactions of defendants BAT Industries Plc, British-American Tobacco Company Limited, and/or BAT (UK & Export) and their subsidiaries and affiliated companies including, but not limited to, defendant Brown & Williamson Tobacco Corporation.

[22] In paragraph 5 it is stated that:

> It is necessary for the purposes of justice and for the due determination of the matters in dispute between the parties that you cause the following witnesses, who are residing in your jurisdiction, to be examined about the matters listed in Number 4 above.

(to which I have made reference).

[23] Mr Cherry Q.C., on behalf of the plaintiffs, attaches particular importance to a part of paragraph 6, which reads:

> The witnesses should be examined in person upon oral examination with the witnesses under oath via a video tape deposition for use at trial in accordance with American practice before a stenographer and with counsel ...

[24] Mr Burnton attaches importance to the concluding words of paragraph 6 which read:

> Such examinations shall be made pursuant to the Minnesota Rules of Civil Procedure and applicable orders of my court, or under such other procedures as may be acceptable to this court.

[25] The request then goes on to deal with matters which I do not

*1997*

*The State of Minnesota v. Philip Morris Inc.*

English Court of Appeal

*Judgment* (Lord Woolf M.R.)

need to recite. It was hoped that the examination would take place during the last two weeks of this month, which, unfortunately, obviously is not possible. It also asks for evidence to be taken during the first two weeks of next month.

[26] Having referred to the Letter of Request, I should refer to the order made by the judge. Having set out the usual formalities, the order requires that the witnesses:

> ... do there submit to be examined upon oath or affirmation in connection with the matters identified in paragraph 4 of the Letter of Request save that the scope of questioning is hereby limited in that no question may be asked of any witness save only in respect of matters set out at paragraphs (i) and (ii) below, and in either case only to elicit evidence admissible at trial.

[27] The judge is seeking there to impose a limit on the Letter of Request. I draw attention, in particular, to the fact that it is "only to elicit evidence admissible at trial". Paragraphs (i) and (ii) read as follows:

> (i) matters referred to in such documents as have been produced in the Minnesota action and copies of which have been provided by the plaintiffs to the witnesses ... at least seven days prior to the commencement of each such examination; or
>
> (ii) matters testified to in such depositions as have already taken place in the Minnesota action and copies of the relevant portions of transcripts of which have been provided to the witnesses and the 4th, 5th and 6th defendants ... at least seven days prior to the commencement of each examination.

[28] In addition to those limitations, the judge also made certain incidental orders which are of relevance. I refer in particular to:

> (e) The examination to be conducted in the English mode; in respect of each examination, the times for examination in chief, cross-examination and re-examination be limited to 10 hours, two hours, and one hour respectively.
>
> (f) The witnesses be permitted to have legal representation at their examination for the purpose solely of taking any proper objection that might be taken to questions put to them in the course of the examination if they so wish.

[29] Following another provision there is a proviso which reads:

> Providing that nothing in the order shall require any of the witnesses to agree to be bound by the terms of the Protective Order dated 16 June 1995 nor the terms of the Addendum dated 4 June 1996, as described in paragraph 8 of the Letter of Request.

The judge accordingly established significant safeguards for the protection of the witnesses. It is reasonably clear from the order that parts of its language reflect a general order which was made with regard to depositions and expert witnesses' provisions by the Honourable Kenneth J. Fitzpatrick on 13 March 1997. The order reproduces a draft which was prepared for the judge by the plaintiffs' solicitors.

[30] Having referred to those documents and the relevant statutory framework, it seems to me that it is possible to identify three issues which arise on this appeal.

1. Was the Letter of Request limited to obtaining evidence for the trial (the "fishing" point)?

2. Is the Letter of Request too uncertain; in other words, does it fail to identify, within reasonable limits, the matters upon which the witnesses are required to be examined (the "uncertainty" point)?

3. Did the limitations imposed by the judge remedy any defects in the Letter of Request, or are there further amendments we can make which will achieve that result if the judge has failed to do so (the "limitation" point)?

*The fishing point*

[31] This has two aspects: first, does the request itself amount to a request for American style discovery which is not within the scope of the 1975 Act; or, secondly, is the request one which is, in itself, objectionable, quite apart from the 1975 Act, because it is designed to achieve a fishing type of discovery on behalf of the plaintiffs?

[32] In considering this issue, it is useful to say something about the chronological background to the application. The history starts on 17 February 1997 with a request for the production of Sir Patrick Sheehy and others for depositions to be taken in the Minnesota action. As I understand the position, they were to be taken in accordance with the Minnesota Rules of Civil Procedure.

[33] The request refers to Rule 30.02(a) of the Minnesota Rules. There are two relevant rules, both of which come within part 5 of the rules which deal with depositions and discovery. They undoubtedly give effect to the type of American discovery to which I have made reference. There is no significant difference between Rule 30.02(a) and Rule 30.02(f). Both are concerned with the type of oral deposition to which I have referred.

[34] On 27 March 1997, lawyers for the 4th, 5th and 6th defendants (the "English companies"), responded to the plaintiffs' request. They indicated that the witnesses are no longer in their control, *i.e.* they could not be dealt with under Rule 30.02(f). That having been indicated, on 24 April the plaintiffs' lawyers notified their intention to apply for the issue of the Letter of Request, and on 5 May 1997 that Letter of Request was actually signed by the Honourable Kenneth J. Fitzpatrick.

[35] The judge did not accept the witnesses' argument that the genesis of the Letter of Request was American-style discovery. Having looked at the relevant rules, I consider that the judge was wrong in coming to that conclusion. It seems to me that there was a very clear

1997

*The State of Minnesota* v. *Philip Morris Inc.*

English Court of Appeal

Judgment (Lord Woolf M.R.)

link between what happened in relation to the request for American-style discovery and the Letter of Request.

[36] Secondly, the witnesses contend that the lawyer acting for the plaintiffs in this matter, Martha K. Wivell, was under a misapprehension as to the position. They suggest that she was unaware of the difference between the type of discovery which is appropriate in this jurisdiction and what is appropriate within the jurisdiction of the Minnesota court. They refer to paragraph 12 of her affidavit in which she suggests that Mr Johnson was wrong in making a suggestion that what was contemplated here was American-style discovery.

[37] However at the end of that paragraph Ms Wivell goes on to indicate that she is aware of Rule 26.02 and:

> ... the plaintiffs intend to limit the evidence extracted from these witnesses to what is admissible at trial.

Argument was advanced before us as to what those words meant. Although oral discovery takes place in the United States such as would not be accepted in this country as being appropriate, the exercise is one which is connected with extracting from the witnesses evidence which could be used at the trial. However, there is a dual purpose to the exercise. An indirect purpose is to discover from the oral examination other evidence which could be used at the trial. The final words in paragraph 12 do not necessarily mean that the exercise is going to be confined to one which does not involve going beyond what we would regard as the proper purposes for ordering an examination under the 1975 Act. Ms Wivell does, however, also indicate in her affidavit that this is not a fishing expedition. She says that the time-limits which they were offering to impose upon their examination would avoid any danger of a fishing expedition.

[38] When referring to the Letter of Request, I drew attention to paragraph 6 and the two different parts thereof which are respectively relied upon by the parties before us on this appeal. There is the reference "for use at trial", to which I give full weight, while recognising that the whole of the American process is designed "to assist the trial".

[39] I refer to the concluding words of the paragraph. When read with the surrounding documents before me, it does appear that there is good reason for counsel for the witnesses to contend that it would appear that the relevant Minnesota rules are being incorporated into the request, in particular the provisions of the order made by the judge in March of this year dealing with deposition and expert witness provisions.

[40] Looking at this matter as a whole, I consider that the witnesses make out a significant case which indicates that the Letter of Request, viewed through the eyes of this jurisdiction, is misconceived. However, I would not on that basis alone determine this appeal adversely to the plaintiffs. Reflecting the general approach that I have indicated, if

there is doubt on this matter, I should give the benefit of that doubt to the plaintiffs. I bear in mind that it is accepted that this is a case where the witnesses could give relevant evidence. I also bear in mind that it is accepted that if there was a properly drafted request, an order would and should be made. In that event, I would be reluctant indeed to send this Letter of Request back to the United States on the basis of technical grounds alone.

[41] I therefore turn to the remaining issues.

### The uncertainty point

[42] I consider that it is only possible to give one answer to the question as to whether or not the Letter of Request is sufficiently certain. All the guidance that the Letter of Request gives the witnesses, as to the issues upon which they are going go be examined which would cover a great many years (the action itself extending over a period in excess of 40 years), is that provided by the sub-headings in paragraph 4 of the request. It mentions smoke and health issues relating to tobacco and cigarettes; marketing of cigarettes; scientific research related to smoking and health issues; manipulation of nicotine by the 4th, 5th and 6th defendants or their subsidiaries and affiliated companies; the exercise of control by those defendants over their subisidiary and affiliated companies; and the interaction of those companies and affiliated companies, including, but not limited to, the 3rd defendant. The Letter of Request, in its terms, is wholly unacceptable. It is too wide and uncertain in its scope and if the matter ended there, there could only be one outcome to this appeal.

[43] Having dealt shortly with the second issue, I turn to the third issue.

### The limitation issue

[44] Have the limitations, to which I have made reference, achieved what they were intended to do, which was to put some control on the areas of the examination and put the witnesses in a position where they can appropriately be examined? That includes asking oneself whether the order which was made by the judge has clarified the situation so that the witnesses will know what they are to be faced with.

[45] The limitations fall within different categories. I do not propose to repeat them. However, I would point out that the identification of documents, while extremely helpful (being an exercise which is not to take place until after the judge's order), puts the witnesses in a position where the order which is made, is one, the precise ambit of which is not known. If this sort of limitation was going to be relied upon, in my judgment there was an obligation placed upon the plaintiffs to identify the documents and parts of the depositions upon which they were proposing to rely prior to the order, so that the witnesses could say that that cannot be a matter which is of direct relevance to the trial, it must

*1997*

The State of Minnesota
v.
Philip Morris Inc.

English Court of Appeal

*Judgment*
(Lord Woolf M.R.)

1997

*The State of Minnesota v. Philip Morris Inc.*

English Court of Appeal

*Judgment* (Lord Woolf M.R.)

be of indirect relevance and, therefore, something upon which it is not appropriate for the courts to make an order.

[46] I take into account Mr Cherry's substantial submissions as to what could happen with regard to privilege and refusal to answer questions. I also take into account, which I do think is significant, the time-limits which are going to be imposed upon examination. It also seems valuable that the witnesses were to be allowed to have a lawyer sitting at their elbow which would give practical effect to the protections upon which Mr Cherry relies.

[47] I finally refer again to the affidavit filed on behalf of the plaintiffs. In that affidavit, there is a table of questions helpfully set out, which are to be the basis of the request. The deponent to the affidavit says:

> I would like to question the witnesses on the above issues [already identified]. For the assistance of the court I set out below in the form of a schedule the matters I wish to address, the identity of the witness to whom I wish to put each question and the issue(s) to which it relates. The plaintiffs undertake to limit the scope of the examinations to matters evidenced either in documents disclosed in the action up to two days before the examination begins ... or referred to in depositions already taken.

The two days was subsequently extended. This seems to be a commendable and desirable effort on behalf of the plaintiffs to introduce the proper balance to which I have made reference. If no proper objection could be made to that schedule, that would have been, in my judgment, a matter of the greatest significance.

[48] There are a number of issues identified as questions in the schedule which are acceptable. However, there are equally some questions which I regard as demonstrating the unsatisfactory nature of this request. I say that with reluctance because I am only too conscious that this was a genuine attempt by the plaintiffs to do what was correct. They make the effort and they then find that, with the assistance of lawyers, judges start criticising their effort. If I read out those which seem to me to fall within this category, I suggest they speak for themselves.

  (16) The deponent's interaction with the other deponents.
  (20) Interaction with other defendants.
  (27) Sale of cigarettes to children.

That is all that is said with regard to those questions.

[49] Those are topics of unlimited generality. I do not see how a witness can prepare himself to deal with matters that happened years ago in relation to questions of that sort. I think therefore that on this third point the plaintiffs are in the greatest possible difficulty. It is therefore necessary to consider whether this appeal should be allowed.

[50] If I thought that by undertaking the exercise this court could redraft the questions in a way which would be fair to both sides, although I would not have welcomed the task, I might have been

prepared to embark upon it. However, Kerr L.J. said in the NORWAY (NO. 1)[7] case, "I do not know how to undertake that exercise".

[51] With regret, I have come to the conclusion that it is not for me, or this court, to undertake that exercise. That is a task which I must remit back to my American colleague so that he can address the matter again, if this is required, in the light of the judgments which this court has given. However, I emphasise in doing so, that I would only take that course if I felt that there was no other appropriate course which could be taken. I hope it will be appreciated that in a matter such as this, the English courts will do whatever they can, with propriety, to assist the American courts. They do not wish to adopt a technical position which differs from that adopted in other jurisdictions. But, on the question of the proper place for pre-trial discovery, our system differs from the American system.

[52] The courts in this jurisdiction operate under the 1975 Act. That controls the ability of this court to assist, out of comity, another jurisdiction. We have to give effect to the proper application of that Act to this difficult subject.

[53] I would therefore allow this appeal.

PETER GIBSON L.J.: [54] The proper approach of an English court to a request made under the Evidence (Proceedings in Other Jurisdictions) Act 1975 is made plain by the authorities. As was said by Lord Denning, M.R., in RE WESTINGHOUSE URANIUM CONTRACT[8] of a request by an American court:

> It is our duty and our pleasure to do all we can to assist that court, just as we would expect the United States court to help us in like circumstances. 'Do unto others as you would be done by'.

[55] Comity dictates that effect should be given to a Letter of Request if that is possible. But the English court's natural inclination to give effect to the request must be tempered both by the requirements of the Act, which limit the jurisdiction of the English court to applications for an order for evidence (*i.e.* factual material required to prove or disprove allegations at trial), and by the proper concern of the English court that those within its jurisdiction who are called upon to give evidence will be fairly dealt with in the evidence-gathering process, which the court may allow to be conducted here for the purposes of the foreign proceedings.

[56] It is unfortunate that English and American lawyers confusingly use the term "discovery" in different ways, and that the practices in the two countries have diverged to such a great extent. Whilst the English and American lawyers start with the same concept of discovery, that is to elicit material under the supervision of the court which although not admissible at the trial for the purpose of proving or disproving facts and issues may lead to the discovery of admissible evidence, in the

1997
—
*The State of Minnesota*
v.
*Philip Morris Inc.*
—
English Court of Appeal

*Judgment* (Peter Gibson L.J.)

---

[7] Cited above.
[8] Cited above, at p. 560.

1997
—
*The State of Minnesota v. Philip Morris Inc.*
—
English Court of Appeal
—
Judgment (Peter Gibson L.J.)

United States the methods of discovery are wider than are permitted in this country, in particular, by including depositions by oral questioning in advance of trial, whereas in England the meaning of discovery is largely limited to the production of documents, the use of interrogatories being the other form of discovery permitted here.

[57] In RADIO CORPORATION OF AMERICA V. RAULAND CORPORATION[9] Devlin J. commented on the practice in America. He referred to the fact that in England discovery of documents may be obtained not only because they are relevant in the case itself, but also because they may fairly lead to a line of inquiry which would disclose relevant material. He continued:

> [I]t is plain that that principle has been carried very much further in the United States than it has been carried in this country. In the United States it is not restricted merely to obtaining a disclosure of documents from the other party to the suit, but there is a procedure which might be called a pre-trial procedure, in the courts of the United States which allows interrogation not merely of the parties to the suit but also of persons who may be witnesses in the suit, or whom it may be thought may be witnesses in the suit, and which requires them to answer questions and produce documents. The questions would not necessarily be restricted to matters which were relevant in the suit, nor would the production be necessarily restricted to admissible evidence, but they might be such as would lead to a train of inquiry which might itself lead to relevant material.

[58] The Federal and Minnesota Rules of Procedure expressly recognise this as the scope of discovery. I quote from Rule 26.02:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party, seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if that information appears reasonably calculated to lead to the discovery of admissible evidence.

[59] It is against that background that the court must look at the Letter of Request. It should do so bearing in mind what the WESTINGHOUSE case itself teaches. In that case the Letter of Request contained words deliberately intended to meet English concerns by being directed to the distinction between testimony for the trial itself and the discovery process. Nevertheless, what we are told in that case is that the court must look not merely at the words used by the draftsman, but also at the substance of the matter, to see whether objectively that which is requested is the over-wide American-style discovery.[10] As Lord Wilberforce said[11]:

---

[9] [1956] 1 Q.B. 618, at p. 643.
[10] See RIO TINTO ZINC CORPORATION V. WESTINGHOUSE ELECTRIC CORPORATION, cited above, at p. 610 *per* Lord Wilberforce, p. 624 *per* Viscount Dilhorne and p. 643 *per* Lord Fraser.
[11] At p. 610.

The fact that any evidence obtained is intended to be put in at the trial, is quite consistent with the inquiry extending (impermissibly) to trains of inquiry which might produce such evidence.

[60] It is not in dispute that the Letter of Request, with which we are concerned, was drafted by the American attorneys for the plaintiffs and that draft was accepted by the judge. Nor is it in dispute that it followed chronologically an attempt by the plaintiffs to obtain the agreement of the English company defendants to the plaintiffs obtaining depositions in America of six witnesses, only two of whom were current employees. The remaining four, the witnesses with whom we are concerned, are no longer under the control of the English companies because they are now only former employees.

[61] There is no reason to think that had the attempt been successful, ordinary American-style discovery would not have followed. In applying for the Letter of Request, the plaintiffs expressly said to the Minnesotan court that they have attempted to take the depositions without resort to that court. It seems to me that that intention was to obtain American pre-trial discovery in accordance with the Minnesota Rules of Procedure which is precisely what the judge in the Minnesotan court ordered.

[62] Mr Cherry Q.C., for the plaintiffs, suggested that the language of the Letter of Request disapplied the obnoxious part of Rule 26.02, which allowed what is not evidence to be obtained on discovery. He relied both on paragraph 6 of the Letter of Request, referring to depositions for use at trial, as well as to paragraph 9 with its reference to the evidence of the witnesses being reduced to writing.

[63] Ms Wivell, the Minnesotan attorney who has filed an affidavit on behalf of the plaintiffs, did not suggest that Rule 26.02 was in any way disapplied. When she said in her affidavit:

> I am aware of Rule 26.02 ... and the plaintiffs intend to limit the evidence extracted from these witnesses to what is admissible at trial

it seems to me that she was in effect acknowledging that, without the limitation, the Letter of Request did go too wide in permitting what would not be acceptable to the courts of this country. It seems to me, therefore, that the Letter of Request itself is too wide in that respect.

[64] However, there is a further fatal defect in the Letter of Request in its failure to specify with sufficient particularity the matters upon which the witnesses are to be examined. As was held in RE NORWAY'S APPLICATION (NO. 1),[12] where the matters, examination on which is requested by the Letter of Request to proceed, are too widely drawn, it will lead to the inference that the Letter of Request was designed to elicit information which might lead to the obtaining of evidence rather than to establish allegations of fact, and that would amount to an impermissible fishing expedition.

[65] If one looks at what was requested in RE NORWAY'S

---

[12] Cited above.

1997

*The State of Minnesota v. Philip Morris Inc.*

English Court of Appeal

Judgment (Peter Gibson L.J.)

APPLICATION,[13] it can be seen that the matters, examination on which was sought, were rather more limited than the six headings which are contained in the Letter of Request and which consitute the only limit ascertainable by this court to the scope of the examination sought by the Letter of Request to be permitted. Mr Cherry stressed the extent of the subject-matter of the litigation and the length of the period over which the alleged conspiracy extended. The litigation in Minnesota is on a grand scale, but the wider the scope of the matters on which examination is sought, the more necessary it is for particulars to be given so as to indicate to the witnesses the scope of the matters on which they can lawfully be examined. The judge himself found that the Letter of Request lacked specificity. To my mind that is obviously correct. I am in entire agreement with my Lord, the Master of the Rolls, on this point.

[66] I would commend the attempt by Ms Wivell to limit the scope of the subject-matter of the examination. But that too seems to me to acknowledge that the Letter of Request is too wide. It is no part of the Letter of Request that there should be the limitations which she suggested, both in relation to the documentation forming the basis of the examination, and as to the more specific schedule to which, she deposes, she will be limiting her questioning if the Letter of Request was to proceed.

[67] Can the Letter of Request be saved, as the judge thought it could, by limiting the examination to eliciting only evidence admissible at trial, by limiting the questions that can be asked to matters referred to in the documents produced on discovery, and to matters testified to in depositions which have been taken in the Minnesota action, as well as by the other procedural directions to which my Lord has referred?

[68] I am unable to accept that the Letter of Request can be so saved. The scope for examination is still enormously wide. Moreover, part of the attempted limitation is by reference to documents and depositions which it is for the plaintiffs' attorneys to select. We are told that the documentation runs to millions of documents, produced not only by the English company defendants but by other defendants. Even if the plaintiffs' attorneys selected only 1 per cent of the documents, for each million produced that would be 10,000 documents. One knows not what are the matters referred to in those documents. Moreover, the suggested limitation gives carte blanche to the plaintiffs' attorneys to choose the matters upon which they wish to examine as well as which documents and which depositions. True it is that they all have to come within the scope indicated in the Letter of Request. But as I have already said, to my mind the matters on which the witnesses could be examined have not been specified with sufficient particularity.

[69] Mr Cherry then submitted that, if we found that the judge's

---

[13] Where details of the Letter of Request are given at p. 438.

order went too wide, we should ourselves limit the Letter of Request either by incorporating Ms Wivell's schedule or, if that itself was too wide, by excising with our blue pencil any headings which we found obnoxious. In my judgment, that would not be a satisfactory procedure. The schedule itself is too wide for the reasons which my Lord has given. Furthermore I take Mr Burnton's point that we are going too far away from the original Letter of Request of the Minnesotan court. Under the judge's order, the examination would be in English, not American, mode, something that the Minnesotan court had not envisaged; it would be limited only to evidence admissible at trial, and again that was not envisaged; it would be limited by reference to depositions and documents, which is a limitation not envisaged by the American judge; and, lastly, it would be limited by reference to the specific matters which Ms Wivell identified in her schedule, and again that was not envisaged by the Minnesotan court. It seems to me that this would involve a redrafting of the Request, which this court in RE NORWAY'S APPLICATION (NO. 1) said should not be done.

[70] Accordingly, I also would allow the appeal. I also do so with some regret because I do not doubt that these witnesses can give important evidence which would be admissible at the trial. A reformulated proper Letter of Request would enable that evidence to be obtained.

OTTON L.J.: [71] I also agree that this appeal should be allowed. I wish only to endorse the sentiments of my Lord, the Master of the Rolls, concerning comity. In the interests of comity, the courts of each country should strive, and be seen to strive, to give effect to the request of the courts of the other. In the vast majority of cases, the more so as the courts on both sides of the Atlantic ocean have become increasingly accustomed to requests of this nature, this object is achieved comfortably within the jurisprudence of both countries and to the satisfaction of the parties. On this rare occasion we are unable to give effect to the request. It must not be perceived that by this decision we are reluctant to co-operate with the United States' courts on account of the fact that this case is part of the high-profile tobacco litigation in the United States, and which has received some publicity in the United Kingdom.

[72] I have striven mightily to give effect to the request, but reluctantly, and for the reasons given, have been unable to do so. In my judgment this is not a case where blue pencilling is appropriate, or where the introduction by this court of a safeguard in the form of a suitably worded limitation can provide adequate protection for the witnesses. Given the width of the request, the formulation of a suitably worded limitation by this court is not, in my view, workable in the context of the proposed examinations. What is required is that the request should be redrafted in different terms.

1997

*The State of Minnesota*
v.
*Philip Morris Inc.*

English Court of Appeal

*Judgment*
(Otton L.J.)

1997
―
*The State of Minnesota*
v.
*Philip Morris Inc.*
―
English Court of Appeal
―
*Judgment*
(Otton L.J.)

[73] However, my reluctance is tempered by the knowledge that the Honourable Kenneth J. Fitzpatrick will readily understand the difficulties this court has faced.

*Appeal allowed with costs.*