**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                             :
MUDDY WATERS CAPITAL LLC,                                     :
                                                             :
              Plaintiff,                                      :
                                                             :
       v.                                                    :     Case No. 19-MC-00564 (VEC)
                                                             :
                                                             :
JOHN DOES 1-10,                                              :
                                                             :
              Defendants.                                    :
------------------------------------------------------------ x

**BANK OF AMERICA CORPORATION AND**
**MERRILL LYNCH PROFESSIONAL CLEARING CORPORATION'S**
<u>**OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**</u>

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ............................................................................................................... 3

I.     The Complaint ....................................................................................................... 3

II.    Muddy Waters Seeks Documents From Respondents ......................................... 5

ARGUMENT .................................................................................................................... 6

I.     Respondents Do Not Possess the Documents ..................................................... 6

       A.    BAC Does Not Possess the Documents ................................................... 7

            1.    BAC does not exercise control over MLI ................................... 7

            2.    BAC does not operate as one with MLI..................................... 8

            3.    BAC does not have access to MLI's documents in the ordinary course .. 10

            4.    MLI is not BAC's agent.............................................................. 10

       B.    ML Pro Does Not Possess The Documents ........................................... 11

II.    Muddy Waters's Subpoenas Impose an Undue Burden on the Respondents ................... 16

       A.    Muddy Waters Can and Should Obtain the Documents Through the UK............ 18

       B.    Muddy Waters's Pleading Does Not Justify Intrusive Non-Party Discovery....... 21

       C.    Muddy Waters's Subpoenas Have Exceeded The Permissible Scope for Non-Party Discovery Under Rule 45 .......................................................... 24

CONCLUSION.................................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*808 Holdings, LLC v. Collective Sharing Hash E3…*,
  2012 WL 1581987 (S.D. Cal. May 4, 2012) .......................................................................21

*Afros S.P.A. v. Krauss–Maffei Corp.*,
  113 F.R.D. 127 (D. Del. 1986) .................................................................................14, 15

*Alimenta (U.S.A.), Inc. v. Anheuser–Busch Companies*,
  99 F.R.D. 309 (N.D. Ga. 1983) ..........................................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................3, 21, 22, 23

*In re ATM Fee Antitrust Litig.*,
  233 F.R.D. 542 (N.D. Cal. 2005) .......................................................................................11

*Bell Altantic Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................3, 21, 22

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*,
  105 F.R.D. 16 (S.D.N.Y. 1984) .........................................................................................16

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003)...........................................................................................................7

*Galas v Alere Inc.*,
  [2018] EWHC 2366 ...........................................................................................................19

*Gerling Int'l Ins. Co. v. C.I.R.*,
  839 F.2d 131 (3d Cir. 1988).................................................................................12, 13, 14

*Gillespie v. Civiletti*,
  629 F.2d 637 (9th Cir. 1980) ..........................................................................................21

*Heraeus Electro-Nite Co. v. Midwest Instrument Co., Inc.*,
  2006 WL 3004877 (E.D. Pa. Oct. 18, 2006)......................................................................13

*Jacobson v. Hound Dog Pet Hotel, LLC*,
  2005 WL 8164434 (D. Minn. May 23, 2005).....................................................................17

*Jones v. Hirschfeld*,
  219 F.R.D. 71 (S.D.N.Y. 2003) ...............................................................................2, 11, 16

*JPMorgan Chase Bank v. Winnick*,
    228 F.R.D. 505 (S.D.N.Y. 2005) ........................................................................15

*Kelly v. Quotron Sys., Inc.*,
    No. 91 Civ. 5408 (WK), 1993, WL 106048 (S.D.N.Y. Apr. 8, 1993)....................10

*LegalZoom.com v. Rocket Lawyer Inc.*,
    2015 WL 12832823 (N.D. Cal. Mar. 23, 2015)....................................................17

*Linde v. Arab Bank, plc*,
    262 F.R.D. 136, 2009 WL 1456573 (E.D.N.Y. May 22, 2009) ............................10

*MsvFrtmif Inc. v. Raymond Selle and Cookson Group*,
    2008 WL 11381507 (D. Conn. July 16, 2008) ............................................7, 8, 9

*Muddy Waters v. John Does 1-10*,
    No. 3:19 Civ. 1293-SK, ECF No. 25 ............................................................ *passim*

*Nalco Co. v. Turner Designs, Inc.*,
    2014 WL 1311571 (N.D. Cal. Mar. 31, 2014)......................................................17

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
    2012 WL 629225 (N.D. Cal. Feb. 27, 2012) ........................................................17

*Pennwalt Corp. v. Plough, Inc.*,
    85 F.R.D. 257 (D. Del. 1979) ..............................................................................13

*Princeton Digital Image Corp. v. Konami Digital Entmt. Inc.*,
    316 F.R.D. 89, 92-93 (D. Del. 2016) ..............................................................13, 14

*S.E.C. v. Credit Bancorp., Ltd.*,
    194 F.R.D. 469 (S.D.N.Y. 2000) ......................................................................6, 13

*SAJ Distributors, Inc. v. Sandoz, Inc.*,
    2008 WL 2668953 (D.N.J. June 27, 2008) ....................................................17, 18

*Sanofi-Aventis v. Sandoz, Inc.*,
    272 F.R.D. 391 (D.N.J. 2011)..............................................................................16

*Securities and Exchange Commission v. Afryie*,
    2018 WL 6991097 (S.D.N.Y. Nov. 26, 2018)......................................................24

*Sicav v. Wang*,
    2014 WL 2624753 (S.D.N.Y. June 12, 2014) ............................................ *passim*

*U.S. v. King*,
    1997 WL 582882 (S.D.N.Y. Sept. 19, 1997)..........................................................8

*In re Vivendi Universal, S.A. Sec. Litig.*,
    2009 WL 8588405 (S.D.N.Y. July 10, 2009) ................................................................7, 8, 10

**Other Authorities**

"Burford Capital shares recover after attacking Muddy Waters report," Financial
    Times (Aug. 8, 2019), available at: https://www.ft.com/content/242dd5dc-
    b9d9-11e9-96bd-8e884d3ea203 .....................................................................................4

Fed. R. Civ. P. 8 ................................................................................................................23

Fed. R. Civ. P. 9(b) ..........................................................................................................24

Fed. R. Civ. P. 34 ...............................................................................................................6

Fed. R. Civ. P. 34(a) ....................................................................................................6, 14

Fed. R. Civ. P. 45 ...................................................................................................... *passim*

Fed. R. Civ. P. 45(c)(3)(A)(iv) ..........................................................................................2

Fed. R. Civ. P. 45(d)(1).........................................................................................2, 17, 21

"Under attack by short-seller, Hong Kong-listed Man Wah stages comeback with
    surge in shares," CNBC.com available at:
    https://www.cnbc.com/2017/06/08/man-wah-shares-surge-after-calling-short-
    seller-muddy-waters-allegations-groundless.html ..........................................................3

Non-parties Bank of America Corporation ("BAC") and Merrill Lynch Professional Clearing Corporation ("ML Pro") submit this Memorandum of Law in Opposition to the Motion to Compel Discovery by Muddy Waters Capital LLC ("Muddy Waters").

## PRELIMINARY STATEMENT

This motion is the latest tactic in Muddy Waters's unnecessary and cumulative crusade to force BAC and ML Pro to produce documents that they do not have and that are in the exclusive possession of an entirely different company: Merrill Lynch International ("MLI"). Muddy Waters has known since at least July 2019 that it must seek its counterparty information from MLI in London. It is no surprise that this information is located outside of the U.S., as it relates to the purchase of European currency bonds issued by a French retailer.

MLI explained to Muddy Waters that although it cannot voluntarily provide this information due to client confidentiality obligations, MLI will produce it if Muddy Waters uses the UK process for obtaining documentary evidence. Indeed, by letter dated November 25, 2019, MLI assured Muddy Waters that it "will not oppose or object to a valid disclosure order of an appropriate UK authority" and provided its service address for such an order. Muddy Waters actually began the process for obtaining this evidence directly from MLI by having the Northern District of California issue a "Letter of Request" to the relevant UK authority on December 16, 2019.

Despite knowing that MLI has the documents it seeks and that Muddy Waters could obtain them in a matter of weeks if it used the proper and appropriate UK channels, Muddy Waters issued eight separate subpoenas seeking this information from four different U.S.-based Bank of

America entities.[1]  Instead of withdrawing these subpoenas and relying on the UK's straight-for-ward process, Muddy Waters has insisted on putting BAC and ML Pro through the burden and expense of responding to non-party subpoenas and, now, responding to this motion to compel.

This sort of scattershot discovery campaign is explicitly prohibited by Rule 45, which re-quires a party issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and mandates that a court "quash or modify" sub-poenas to non-parties if they subject the non-party to undue burden and expense.  Fed. R. Civ. P. 45(d)(1) and (c)(3)(A)(iv); *Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003).  Muddy Wa-ters has failed to take any steps to avoid imposing undue burden and expense on BAC and ML Pro, especially since Muddy Waters can easily obtain these documents directly from MLI using the UK's procedure.  There is no reason to help Muddy Waters circumvent that process, which may be complete before this motion is heard.

More importantly, Muddy Waters cannot compel BAC or ML Pro to produce MLI's doc-uments under well-established Second Circuit law, since it is an entirely separate company. BAC is merely a holding company that does not share operations with MLI or participate in its trading activities and does not obtain documents from MLI in the ordinary course of business. ML Pro is also an entirely separate entity, under a different branch of the corporate tree.  It lacks access to MLI's files and is not litigating on MLI's behalf (as required to compel production from a sister corporation).   Thus, there is no basis to require BAC or ML Pro to obtain and pro-duce documents held by a different company.

---

[1] *See* Fletcher Ex. F, ECF No. 5-6 ("Oct. 1, 2019 Ltr. from J. Fletcher to BAC"), at 1 (enclosing two subpoenas to each of four Bank of America entities).

More broadly, Respondents should not be forced to participate in a discovery process based on a Complaint that plainly fails to state a claim. The Supreme Court made clear in *Bell Atlantic Corp. v. Twombly* that "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. 544, 557 (2007)). Muddy Waters's basis for discovery is a Complaint that alleges no more than the close proximity of a trade and a public announcement – a fact that could reflect insider trading but is equally consistent with bad timing. The Complaint therefore fails to raise "more than the mere possibility of misconduct," *Twombly*, 550 U.S. at 557, and would face an immediate motion to dismiss, were there any defendants in the case.

Finally, in the event that this Court is not inclined to deny Muddy Waters' motion outright, it should hold the motion in abeyance until Muddy Waters has attempted to obtain the documents directly from MLI using the UK Court process to give effect to the issued Letter of Request.

## BACKGROUND

### I.     The Complaint

This motion arises from an insider trading Complaint that Muddy Waters filed against ten unnamed defendants in the Northern District of California on March 11, 2019. Dkt. No. 1-1 (the "Complaint"). Muddy Waters is a California-based firm that adopts a short position in a company and then releases reports alleging vulnerabilities in the company's business.[2] In its Complaint, Muddy Waters claims that in December 2015, it arranged with ML Pro to acquire a short

---

[2] *Cf.* Yen Nee Lee, "Under attack by short-seller, Hong Kong-listed Man Wah stages comeback with surge in shares," CNBC.com (June 8, 2017, 10:24 PM EDT), available at:

position in the French retail conglomerate Casino Guichard-Perrachon, S.A. ("Casino").  Complaint ¶ 4.  Muddy Waters alleges that ML Pro "and its affiliated broker-dealer entities owned by [ML Pro] or Bank of America, N.A. (altogether, the "BAML Entities") . . . obtain[ed] . . . Casino bonds for [Muddy Waters] to borrow and thereafter potentially sell to counterparties in the over-the-counter securities marketplace."  *Id.*  On December 9 and 10, 2015, the BAML Entities "arranged for [Muddy Waters] to sell three blocks of Casino bonds for . . . $5.1 million."  *Id.* at ¶ 4-5.  The Complaint further asserts that five days later, the BAML Entities received bids for Muddy Waters to sell an unspecified number of blocks of Casino bonds for "just under 18 million."  *Id.*  ¶ 6.  Muddy Waters accepted the bids and executed the trades, which it calls the "December 15 Transactions."  *Id.*

According to the Complaint, a few hours after Muddy Waters completed the December 15 Transactions, Casino issued a surprise press release announcing that it would undertake a financial deleveraging plan.  *Id.* ¶ 7.  Muddy Waters alleges that this announcement "caused the price of the Casino bonds that [Muddy Waters] had sold hours earlier to rise substantially[,]" thereby "diminishing the profits [Muddy Waters] otherwise might have made when [it] subsequently closed out the short positions on the Casino bonds."  *Id.*

Muddy Waters claims, "on information and belief," that its counterparties possessed material, non-public information concerning Casino's deleveraging announcement.  *Id.* ¶ 29.  But

---

https://www.cnbc.com/2017/06/08/man-wah-shares-surge-after-calling-short-seller-muddy-waters-allegations-groundless.html (describing Muddy Waters's short-sell attack and firm's recovery after Citi Research analysts declared that Muddy Waters's arguments against the firm "appear[ed] groundless.");  "Burford Capital shares recover after attacking Muddy Waters report," Financial Times (Aug. 8, 2019), available at: https://www.ft.com/content/242dd5dc-b9d9-11e9-96bd-8e884d3ea203 (describing firm's rebuttal and rebound following an attack by Muddy Waters).

the sole fact offered in support of this theory is the temporal proximity between the December 15

Transactions and the deleveraging announcement.   Muddy Waters does not claim that the vol-

ume of the trade was in itself suspicious (it does not even say how many bonds, or blocks of

bonds, were sold).  It does not cite suspicious communications.  And it can hardly allege there

are suggestive connections between Casino and the buyers, because (as this motion makes clear)

it does not even know who the buyers were.  All that is alleged is that Muddy Waters shorted Ca-

sino and hours later an announcement caused Casino's stock to rise.

## II.    Muddy Waters Seeks Documents From Respondents

In March 2019, Muddy Waters filed suit against its unknown counterparties.  *See* Com-

plaint.  Three months later, Muddy Waters served subpoenas on BAC and ML Pro seeking,

among other things, documents identifying the counterparties to the December 15 Transactions

or their agents.  *See* Fletcher Declaration Exhibits 3-7, ECF Nos. 5-3, 5-5, 5-7.

BAC and ML Pro objected on the basis that they did not possess the documents at issue.

Bank of America in-house counsel informed Muddy Waters that to the extent any Bank of Amer-

ica entity has these documents, they would be with MLI in London.  Declaration of Susan J. Ki-

velson ("Kivelson Decl.") ¶ 3.  BAC acts as the holding company for Bank of America entities

and does not participate in banking or trading activities.  Declaration of Gale K. Chang in Opp.

to Pl.'s Mot. to Compel ("Chang Decl.") ¶ 4.  ML Pro is entirely separate from MLI and, simi-

larly, does not have visibility into MLI's files.  *See* Fletcher Ex. H, ECF No. 5-8 ("Griffin Tr."),

at 115:1-13.  Therefore, if Muddy Waters wanted the documents it would have to go to MLI.

Muddy Waters waited four months to contact MLI.  *See* Fletcher Ex. K, Dkt. 5-11.  When

contacted, MLI quickly confirmed that it possessed the counterparty information Muddy Waters

sought and that, while it could not voluntarily disclose the counterparties due to client confidentiality obligations, it would "<u>not</u> oppose or object to a valid disclosure order of an appropriate UK authority." *Id.* (emphasis in original).

Muddy Waters filed an *ex parte* motion seeking issuance of a letter of request on November 27, 2019, following which Muddy Waters filed this motion to compel production from BAC and ML Pro.  On December 16, 2019, the Honorable Judge Sallie Kim issued a letter of request to the Senior Master of the High Court of England and Wales for international judicial assistance.  Therefore, Muddy Waters is proceeding to obtain production of the documents directly from MLI. *Muddy Waters v. John Does 1-10*, No. 3:19 Civ. 1293-SK, ECF No. 25 ("Letter of Request").

## ARGUMENT

The Court should deny Muddy Waters's motion to compel because Respondents do not possess the requested documents, Muddy Waters can obtain the documents through UK process, and discovery through the U.S. courts is not justified.

## I.      Respondents Do Not Possess the Documents

Federal Rule of Civil Procedure 34 requires respondents to discovery requests to produce only those documents that are in their "possession, custody or control."  Fed. R. Civ. P. 34(a).  On a motion to compel, it is the movant's burden to demonstrate that respondents in fact possess or control the sought-after documents.  *S.E.C. v. Credit Bancorp., Ltd.*, 194 F.R.D. 469, 472 (S.D.N.Y. 2000).  Muddy Waters has not met and cannot meet this burden, because BAC and ML Pro are distinct entities from MLI, with no control over MLI's operations or regular access to its confidential documents in the ordinary course of business.

## A.  BAC Does Not Possess the Documents

It is hornbook law that "[a] parent corporation is distinct from a separately incorporated subsidiary." *Sicav v. Wang*, 2014 WL 2624753, at *4 (S.D.N.Y. June 12, 2014).  "The properties of two corporations are distinct, though the same shareholders own or control both." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) (quotation marks and citation omitted); *see also id.* ("A holding corporation does not own the subsidiary's property.") (emphasis added).  As a result, "a document held by a subsidiary is not within the control of the parent, and therefore a parent cannot be legally obligated . . . to produce it, unless the intracorporate relationship establishes some legal right, authority or ability" to obtain the requested documents. *Sicav*, 2014 WL 2624753, at *4 (quotation marks and citation omitted).

In determining whether the parent and subsidiary have such a relationship, courts in the Second Circuit do not rely solely on the corporations' legal relationship.  *MsvFrtmif Inc. v. Raymond Selle and Cookson Group*, 2008 WL 11381507 (D. Conn. July 16, 2008) ("[T]he particular form of the corporate relationship does not govern whether a party controls documents.") (quotation marks and citations omitted).  Rather, courts must "inquire into . . . whether the entity on which the subpoena was served has the practical ability to obtain the documents from the affiliate." *In re Vivendi Universal, S.A. Sec. Litig.*, 2009 WL 8588405, at *3 (S.D.N.Y. July 10, 2009).  Four factors guide this inquiry: "[1] the degree of ownership and control exercised by the parent over the subsidiary, [2] a showing that the two entities operate as one, [3] demonstrated access to documents in the ordinary course of business, and [4] an agency relationship." *Sicav*, 2014 WL 2624753, at *4 (citation omitted).  These factors decisively favor BAC.

### 1.  BAC does not exercise control over MLI

In assessing the degree of ownership and control a parent exercises over its subsidiary, courts in this Circuit are careful to note that "[m]ere ownership by a parent . . . is not a decisive

factor but merely one among several." *Sicav*, 2014 WL 2624753, at *5; *see also In re Vivendi*, 2009 WL 8588405, at *3 ("[A]lthough there is no dispute that SGBT is a wholly owned subsidiary of SG, that fact is not controlling in this Circuit."). Courts "engage in a factual inquiry into practical control, of which ownership is but one part." *Sicav*, 2014 WL 2624753, at *5.

In *Sicav*, the court found that this factor undermined the case for compelling discovery where, notwithstanding the parent's ownership of its subsidiary, the parent could not participate in its subsidiary's decision-making, could not prevent the subsidiary from buying or selling property, and in general lacked any track record of "actually exerted control." 2014 WL 2624753, at *5; *see also U.S. v. King*, 1997 WL 582882, at *3-4 (S.D.N.Y. Sept. 19, 1997) (ordering subpoenas quashed where holding company "had no direct or indirect involvement in any insurance placement made by its subsidiary"); *MsvFrtmif Inc. v. Raymond Selle and Cookson Group*, 2008 WL 11381507, at *5-6 (D. Conn. July 16, 2008) (denying motion to compel where parent did not exercise actual control over its subsidiaries).

Here, similarly, BAC acts as the holding company for Bank of America entities. It does not participate in trading activities or participate in MLI's day-to-day operations. Chang Decl. ¶ 6. While BAC does indirectly own MLI, Muddy Waters points to no evidence that it actually exerts control over MLI. Therefore, BAC's degree of control cuts against Muddy Waters's motion.

### 2.      BAC does not operate as one with MLI

The second factor asks whether the subsidiary and parent are alter egos of one another. *Sicav*, 2014 WL 2624753, at *7. A parent and subsidiary may be said to operate as one entity if, for example, "they shared employees, shared facilities, shared office space and utilized common practices and forms." *Sicav*, 2014 WL 2624753, at *6; *see also In re Vivendi*, 2009 WL 8588405, at *4. In *Sicav*, the court considered each of these sub-factors and found they mostly favored denying a motion to dismiss. 2014 WL 2624753, at *6. First, the companies pursued

distinct activities: the parent was merely a holding company, whose activities consisted of board meetings and regulatory filings, while the subsidiary manufactured and sold plate heat exchangers. *Id.* Second, the companies did not generally share employees, although at least three of the parent's executives were also associated with relevant subsidiaries. *Id.* Third, the companies did not share offices or facilities. *Id.* at 7. "In sum, there [was] little commonality between [the parent's] day-to-day operations and the day-to-day operations of its subsidiaries." *Id*; *see also MsvFrtmif Inc.*, 2008 WL 11381507, at *6 (denying motion to compel where parent did not "produce, sell, or distribute any products in conjunction with any of its subsidiaries," there was no overlap in management, and the parent had no role in the subsidiary's day-to-day operations).

The facts are no different here. BAC and MLI pursue different activities. BAC acts as a holding company, while MLI conducts trades and investments on behalf of its clients. Chang Decl. ¶ 8. BAC and MLI each have their own separate employees. *Id.* BAC's employees are corporate executives and administrative staff. MLI, by contrast, employs investment bankers, traders, sales persons, and market researchers. *Id.* The companies have separate Presidents and Boards of Directors. *Id*. Although one member of BAC's 17-person Board of Directors is currently serving as a non-executive director for MLI, MLI's three executive directors – and seven of nine directors overall – are not BAC employees. *Id.* The two companies are less connected by employees than the parent and subsidiary in *Sicav*, which the *Sicav* court found were not alter egos. 2014 WL 2624753, at *6. Finally, BAC and MLI do not share facilities or office spaces. BAC is in Charlotte, MLI in London. *Id.* ¶ 9. And BAC personnel do not access MLI trading documents in the ordinary course of business. *Id.* ¶ 10. There is no commonality between the companies' operations. Because Muddy Waters can point to no evidence that BAC and MLI are alter egos of one another, the second factor cuts against Muddy Waters's motion to compel.

### 3.   BAC does not have access to MLI's documents in the ordinary course

The third factor asks whether the parent has demonstrated ability to access its subsidiary's documents in the ordinary course of business.  *Sicav*, 2014 WL 2624753, at *5.  "Access and ability to obtain documents have been found where documents ordinarily flow freely between parent and subsidiary."  *In re Vivendi*, 2009 WL 8588405, at *3 (quoting *Linde v. Arab Bank, plc*, 262 F.R.D. 136, 2009 WL 1456573, at *2 (E.D.N.Y. May 22, 2009)).

Here, Muddy Waters has presented no evidence that BAC accesses MLI's documents in the ordinary course of business.  BAC, by contrast, has submitted a sworn declaration attesting that its personnel do not access MLI transaction documents or client files in the ordinary course of business.  Chang Decl. ¶ 9.[3]  Therefore, the third factor also favors denial of Muddy Waters's motion.

### 4.   MLI is not BAC's agent

The fourth factor asks whether the subsidiary was acting as the parent's agent with respect to the transaction at issue.  *Sicav*, 2014 WL 2624753, at *4.  Importantly, the mere fact that a parent wholly owns a subsidiary does not make that subsidiary an agent.  *Kelly v. Quotron Sys., Inc.*, 1993 WL 106048, at *3 (S.D.N.Y. Apr. 8, 1993) ("Even a wholly-owned subsidiary with identical executive officers is not considered an agent for its parent corporation unless that subsidiary can be characterized as a mere 'dummy.'").  Otherwise this factor would always favor the movant.

Here, Plaintiff has again offered no evidence that MLI acted as BAC's agent.  BAC, for its part, states that MLI does not act as BAC's agent in the ordinary course of business and did

---

[3] Muddy Waters cites Keith Griffin's testimony that he is aware of no general policy against sharing documents between offices, Plaintiff's Mem. 9, but that is very different from saying that BAC or ML Pro has an affirmative ability to obtain client-confidential documents from MLI.

not act as BAC's agent with respect to the December 15 Transactions.  Chang Decl. ¶ 10.  MLI is

simply an indirect and remote subsidiary of BAC, separated from BAC by four different corpora-

tions.  Chang Decl. ¶ 7.  Therefore, this factor also favors denial of Muddy Waters's motion.

In all, each of the four factors courts in this circuit use to determine whether a parent con-

trols its subsidiary's documents demonstrates that BAC does not control MLI's documents and

cannot be compelled to produce them.

Recognizing that it cannot meet the Second Circuit's rigorous standard, Muddy Waters

attempts to side-step these four factors by relying primarily on the Northern District of Califor-

nia's decision in *In re ATM Fee Antitrust Litig*., 233 F.R.D. 542, 545 (N.D. Cal. 2005).  But that

case is entirely distinguishable and cannot be applied here.  First, BAC was a party in that case,

so Rule 45's additional protections for non-parties were not at issue.  *See Jones*, 219 F.R.D. at 74

(discussing Rule 45's protections for non-parties).  Second, *In re ATM Fee Antitrust Litigation*

concerned a motion to compel discovery of documents held by a U.S.-based direct subsidiary,

not a foreign indirect subsidiary, and the U.S.-based subsidiary did not assert that confidentiality

obligations prevented it from disclosing the documents to its parent.  *See* 233 F.R.D. at 545.  The

burdens of discovery are not comparable.  Third, and most importantly, *In re ATM Fee Antitrust*

*Litigation* directly contradicts the analysis applied to parent/subsidiary discovery issues in the

Second Circuit.  Under Second Circuit law, it is clear that BAC does not control the requested

documents and cannot be compelled to produce them.

### B.    ML Pro Does Not Possess The Documents

For many of the same reasons that BAC does not possess the documents Muddy Waters

seeks, ML Pro also does not possess the documents.  ML Pro does not in any sense own or con-

trol MLI—they are on entirely separate branches of the corporate tree.  *See* Fletcher Ex. L, ECF

No. 5-12 (showing that ML Pro is under BofA Securities, Inc., while MLI is under BofAML Jersey Holdings Ltd.).  It cannot access MLI's documents in the ordinary course of business.  *See* Griffin Tr. 115:3-13 ("I would only have access to information with the BAML ML Pro entity. I would not have access to get any other documentation or statements from entities outside of that.").[4]  Nor can it access counterparty-identifying records with respect to specific transactions in which it might have played a part.  *See id.* at 117 ("I know that ML Pro doesn't have access to information related to the execution and counterparties that MLI might have been interacting with.").  And even if ML Pro acted as clearing broker to clear trades for MLI, that ministerial act is not sufficient to require ML Pro to obtain documents from MLI.  Under the Second Circuit's test for possession, *see Sicav*, 2014 WL 2624753, at *4, ML Pro does not possess the documents.

Muddy Waters relies on the leading Third Circuit decision *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131 (3d Cir. 1988).  There, the Third Circuit reviewed the case law and reported that "[t]he requisite control has been found only where the sister corporation was found to be the alter ego of the litigating entity . . . or where the litigating corporation had acted with its sister in effecting the transaction giving rise to suit *and* is litigating on its behalf."  *Id.* at 141 (emphasis added).  Even under this rule, however, Muddy Waters fails to show that ML Pro possesses MLI's documents.

As in the Second Circuit parent-subsidiary cases above, establishing that sister corporations are alter egos requires more than evidence that they may occasionally cooperate or share a

---

[4] Muddy Waters makes much of ML Pro account manager Keith Griffin's testimony that he could informally request documents from MLI and that there was no policy preventing MLI from voluntarily providing the documents.  Plaintiff's Mem. 14-15.  But that is true of almost any two companies.  Muddy Waters has not shown that ML Pro had regular, privileged access to MLI's documents, still less the kind of confidential documents at issue here.  In fact, Mr. Griffin testified that he does not ordinarily have access to MLI's documents related to execution and counterparties.  *See* Griffin Tr. at 117.

few directors.  In *Pennwalt Corp. v. Plough, Inc.*, the court denied a motion to compel and held a document custodian's "rights should not be determined in absentia" where there was no evidence that the sister corporations had "identical Boards of Directors, or that their respective business operations [were] so intertwined as to render meaningless their separate corporate identities."  85 F.R.D. 257, 263 (D. Del. 1979).  In *Princeton Digital Image Corp. v. Konami Digital Entmt. Inc.*, similarly, the court emphasized evidence that the sister corporations had separate presidents, boards of directors, and employees and that the litigating corporation did not have access to its sister's documents in the ordinary course of business.  316 F.R.D. 89, 92-93 (D. Del. 2016).  The *Gerling* court itself refused to affirm an order to compel where there was no record that the sister corporations had disregarded their corporate forms or that they had an agent-principal relationship.  839 F.2d at 141, 141 n.13; *see also Heraeus Electro-Nite Co. v. Midwest Instrument Co., Inc.*, 2006 WL 3004877, at *2-3 (E.D. Pa. Oct. 18, 2006) (denying motion to compel where, although the companies had one director in common, there was no showing that the companies operated as a single functional unit, had identical stockholders and directors, or that the respondent used its affiliates' documents to meet its own business needs).[5]

   *Gerling*'s second basis for compelling a corporation to produce its sister's documents is no easier to establish.  Courts require a specific showing both that the litigating corporation acted

---

[5] Even a respondent's general access to its sister corporation's documents is not sufficient to show that the respondent has control over specific requested documents.  In *S.E.C. v. Credit Bancorp., Ltd.*, 194 F.R.D. 469 (S.D.N.Y. 2000), the movant sought discovery from SASI of documents identifying Credit Suisse (Zurich) customers; SASI claimed the requested documents were with Credit Suisse (Zurich) and SASI could not access them.  *Id.*  SASI specifically represented that even where it was involved in some respect with a Credit Suisse (Zurich) transaction, it could not obtain information about the identities of Credit Suisse (Zurich)'s customers.  *Id.* at 472-73.  The movant argued that SASI must be able to access the documents, as it could plainly access documents relevant to both SASI and Credit Suisse (Zurich).  *Id.* at 473.  But the court rejected the argument, distinguishing general access to documents from access to the specific type of documents at issue.  *Id.* at 473-74.

with its sister in effecting the transaction giving rise to suit *and* that the litigating corporation is litigating on its sister's behalf.  *Gerling*, 839 F.2d at 141.  In *Princeton Digital Image Corp. v. Konami Digital Entertainment*, there was no doubt that Konami US was able to obtain some technical documents from Konami Japan for purposes of litigation.  316 F.R.D. at 93.  Yet this was not enough to show either that Konami US acted with its sister corporation *or* that it was litigating on Konami Japan's behalf.  *Id.* ("That Konami Japan . . . made evidence (source code) in its possession accessible to Konami US . . . cannot be enough to [satisfy Plaintiff's burden] under Rule 34(a).").  The court stressed the absence of any evidence that Konami Japan directed the course of litigation or made important strategic decisions in the matter.  *Id.*

By way of contrast, in *Afros S.P.A. v. Krauss–Maffei Corp.,* 113 F.R.D. 127 (D. Del. 1986), where the court ultimately granted the plaintiff's motion to compel, the court first found the following facts establishing the corporations' close relationship with respect to the relevant transaction and the respondent's access to the documents:

> (1) KMC [the respondent] was KMAG's wholly owned subsidiary and was the exclusive seller of KMAG's products in the United States; (2) the four members comprising KMC's Board of Directors were all KMAG employees, and two of these board members also "played prominent roles in the management of KMC"; (3) every one of the four documents that KMC had produced in response to Afros' discovery request at issue "were obtained from KMAG's files," and the record demonstrated that KMAG provided these documents "in the interest of assisting KMC move this case toward trial" and "with full cooperation"; (4) "[k]ey decisions regarding [the] litigation, primarily the assignment of patent rights [from KMAG to KMC] and [the] decision to counterclaim, were made by a KMAG employee with no direct connection to KMC" and indeed, were made without even informing key KMC decision-makers beforehand; (5) "KMAG is responsible for the development" of the accused products, "and any question regarding infringement will necessarily reference acts it performed"; and (6) "KMAG would receive a direct benefit from a favorable judgment" because "KMAG's sales in the United States, through KMC, will be enhanced because it would be rid of a competitor or, if it chose, it could license Afros, thereby increasing the subsidiary's income through royalties."

*Princeton Digital Imaging Corp.*, 316 F.R.D. at 94 (quoting *Afros*, 113 F.R.D. at 131–32).

Here, the facts are far closer to *Princeton Digital Imaging Corp.* than they are to *Afros*. As in *Princeton Digital Imaging*, Muddy Waters has not demonstrated ML Pro's precise relationship to the transaction at issue, and there is no evidence that MLI is directing the litigation or influencing strategic decisions in any way.[6]  Muddy Waters's showing is even weaker than Princeton Digital Imaging's insofar as Muddy Waters does not claim that ML Pro has received other documents from MLI for purposes of this litigation.  And absolutely none of the factors cited in *Afros* are present here.  ML Pro and MLI do not have an exclusive relationship, their boards do not overlap, ML Pro has not produced any documents from MLI's files, MLI is not making litigation decisions for ML Pro, and MLI will receive no direct benefit from the outcome of this motion or the litigation in general.

The cases cited by Muddy Waters on this point are easily distinguishable.  In *Alimenta (U.S.A.), Inc. v. Anheuser–Busch Companies*, the court found that the sister corporations acted "as one" with respect to the transaction at issue, and the respondent was in fact the plaintiff in the action, making it "particularly unfair to shield it from discovery."  99 F.R.D. 309, 313 (N.D.Ga.1983); *see also JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 507 (S.D.N.Y. 2005) (finding plaintiff could not evade duty to produce documents based on transfer of those

---

[6] Muddy Waters suggests that "by furnishing a letter proposing to produce the requested documents in response to an order issued by the appropriate UK authority, MLI appears to have acted in concert with MLPro's and BAC's anticipated opposition to the instant motion."  Plaintiff's Mem. 15.  This is a bizarre twisting of events.  Muddy Waters wants the reader to imagine that MLI sent an unprompted letter just to say that it agreed with everything BAC and ML Pro had been saying.  What actually happened is that Muddy Waters sent a letter to MLI asking if it had the documents and would voluntarily produce them.  MLI responded that it had the documents, could not voluntarily produce them, but would do so with a valid UK court order.  Fletcher Ex. K.  Why this statement of MLI's position should require coordination is hard to imagine.  If MLI's position were not genuine, it could simply hand the documents to the Respondents (or to Muddy Waters), and this impasse would be at an end.

documents where it had brought the claim); *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 35 (S.D.N.Y. 1984) (holding that "if the French government is to be the . . . beneficiary of any award for [plaintiff]," it cannot "refuse to produce documents necessary for full and fair litigation . . .").

In *Sanofi-Aventis v. Sandoz, Inc.*, the movant presented evidence that the respondent described its affiliate as "perform[ing] activities at the request of [respondent]" and characterized one of the affiliate's facilities as "our" plant.  272 F.R.D. 391, 935-96 (D.N.J. 2011).  The affiliate even stated in a letter to the FDA that correspondence should be forwarded to the respondent. *Id.*  Moreover, the respondent had already used its affiliate's personnel and documents, including the documents at issue, in the litigation and with the FDA.  *Id.*  The court rejected the respondent's attempt to use the foreign affiliation as both a sword and a shield.  *Id.*

Here, Respondents are non-parties and are not attempting to use the documents or their foreign-party affiliate for anything.  ML Pro's role is focused on the mechanical act of clearing trades.

In sum, Muddy Waters has not met either of *Gerling*'s tests for sister corporation control: it has not established that ML Pro (i) is the alter ego of MLI, and it has not established that (ii) ML Pro acted with its sister in effecting the transaction giving rise to suit *and* is litigating on its behalf.

Because Muddy Waters has failed to show that Respondents control the requested documents, its motion to compel should be denied.

## II.    Muddy Waters's Subpoenas Impose an Undue Burden on the Respondents

Rule 45 protects non-parties from unwarranted discovery requests by requiring a party to take reasonable steps to avoid imposing an unjustified burden and mandating that a court modify or quash any subpoena that imposes an undue burden.  *Jones*, 219 F.R.D. at 74 (citing Fed. R.

Civ. P. 45).  In determining whether a particular subpoena imposes an undue burden on a non-party, courts consider, among other things, whether the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive. *See LegalZoom.com v. Rocket Lawyer Inc.*, 2015 WL 12832823, at *2 (N.D. Cal. Mar. 23, 2015) ("Even if a subpoena to a non-party seeks relevant information, the Court must limit discovery if 'the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive' or if 'the burden or expense of the proposed discovery outweighs its likely benefit.'" (quoting Fed. R. Civ. P. 45(d)(1)); *Nalco Co. v. Turner Designs, Inc.*, 2014 WL 1311571, at *1 (N.D. Cal. Mar. 31, 2014) (denying motion to compel because subpoenaing party failed to take reasonable steps to avoid imposing undue burden); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 629225, at *1 (N.D. Cal. Feb. 27, 2012) ("[B]ecause antitrust plaintiffs did not make reasonable attempts to avoid imposing an undue burden on the nonparties, sanctions against antitrust plaintiffs are warranted under Rule 45.").[7]

Here, Muddy Waters's discovery requests impose an undue burden in two respects.  First, this motion against non-parties that do not have the requested documents is not the only process available to Muddy Waters.  Muddy Waters can seek—and has already commenced the process to obtain—an order from the UK Competent Authority being the Senior Master of the High Court of England and Wales, Queen's Bench Division, the Royal Courts of Justice (the "High

---

[7] *See also Jacobson v. Hound Dog Pet Hotel, LLC*, 2005 WL 8164434, at *3 (D. Minn. May 23, 2005) (denying motion to compel based on undue burden where requested documents were obtainable from another source); *SAJ Distributors, Inc. v. Sandoz, Inc.*, 2008 WL 2668953, at *2-3 (D.N.J. June 27, 2008) (denying motion to compel where plaintiff sought sensitive, confidential data).

Court of England and Wales") compelling MLI, the actual document custodian, to produce particular documents specified in that order.  MLI has assured Muddy Waters that it will not object to or oppose a valid order.  Fletcher Ex. K, ECF No. 5-11.  Second, Muddy Waters's discovery requests are premature because its Complaint clearly would not survive a motion to dismiss.

### A.    Muddy Waters Can and Should Obtain the Documents Through the UK

The High Court of England and Wales is the appropriate venue for seeking production of documentary evidence by MLI because (a) the documents contain confidential information and the disclosure of that information could have serious consequences for the John Does (and MLI), and (b) due to the English law doctrine of separate legal personality, a UK subsidiary is not required to produce its documents to its parent or sister entity should the latter be compelled in foreign proceedings to provide documents that its UK subsidiary possesses.

First, MLI requires a valid order from the High Court of England and Wales to give effect to the Letter of Request before it can produce the requested documents to Muddy Waters.  In correspondence with Muddy Waters, which Muddy Waters submitted as part of its motion, MLI's associate general counsel explained that "[o]wing to client/counterparty confidentiality obligations MLI is unable to disclose [the requested counterparty information] voluntarily. However, I can confirm that MLI will not oppose or object to a valid disclosure order of an appropriate UK authority."  Fletcher Ex. K, ECF No. 5-11.[8]

Second, English law defines MLI's rights and obligations with respect to documents in its possession, custody or power, and under UK law Muddy Waters would need to use the Hague

---

[8] MLI's associate general counsel further provided MLI's service address and instructions for how to ensure that any English Court order would quickly reach his attention.  *Id.*

Convention process to compel disclosure by MLI of the requested documents rather than sub-poena a parent or sister corporation.  The Evidence (Proceedings in Other Jurisdictions) Act 1975 (the "1975 Act") implements the UK's obligations under the Hague Convention into English law.  The 1975 Act provides, and is the basis of, the jurisdiction of the High Court of England and Wales to make an order compelling evidence to be obtained in England for the purposes of civil proceedings in a foreign requesting court.[9]

Muddy Waters argues that the UK process may not be effective because it needs the counterparties' identities by February 24, 2020 to comply with a Northern District of California court order and there is reason to doubt that the High Court of England and Wales will allow the requested documents at all.  Neither argument is persuasive.

As to the alleged time constraint, Muddy Waters has no one but itself to blame.  Respondents informed Muddy Waters in July 2019 that they did not have the requested documents and Muddy Waters would have to ask MLI for them.  Kivelson Decl. ¶ 3.  If Muddy Waters had sought an order from the High Court of England and Wales at the time, it very likely would have documents identifying the counterparties by now.  Instead, Muddy Waters chose to wait until the end of November 2019 to contact MLI and commence the Letter of Request process.  *See* Fletcher Ex. K, Dkt. 5-11 (Ltr. from H. Beal to J. Fletcher); Letter of Request.  Muddy Waters's indecision and delay are not good reasons to compel Respondents to produce an affiliate's confidential documents.

The alleged time constraint is a weaker argument now that the Honorable Judge Sallie Kim has issued the Letter of Request.  To give effect to the Letter of Request, Muddy Waters's

---

[9] *Galas v Alere Inc.*, [2018] EWHC 2366.

UK Counsel need only make an application, on a without notice basis, to the High Court of England and Wales for an order under the 1975 Act for documentary evidence to be obtained. This requires filing at the High Court of England and Wales: an application notice, written evidence supporting the application (e.g., a witness statement), a statement of relevant issues, a draft order, and the Letter of Request. Once Muddy Waters submits its application, it may take as little as a week or two for the Senior Master to decide whether to grant an order to give effect to the Letter of Request. The order should contain a deadline by when MLI must produce the particular documents specified in that order. In other words, Muddy Waters may have an order from the High Court of England and Wales before this motion is decided. Should Muddy Waters not receive the documents before February 24, 2020, it can certainly point to its efforts as a basis for an extension in the Northern District of California.

As to the likelihood of the High Court of England and Wales granting an order to give effect to the Letter of Request, Muddy Waters is simply mistaken. The High Court of England and Wales will ordinarily give effect to a letter of request so far as it is proper, practicable and permissible under English law.[10] This involves the Senior Master deciding, among other points, whether (a) the documents requested in the Letter of Request have been specified with sufficient

_____

[10] Additionally, the opinions Muddy Waters cites do not cast any doubt on Muddy Waters's ability to obtain the documents through UK process. The opinions warn that English law does not permit broad discovery from non-parties. *See, e.g.*, Fletcher Ex. P, ECF No. 5-16 ("Panayioutou v. Sony Music Ltd."), at 151 (explaining that a letter of request may not be used to compel a recipient to describe all relevant documents he or she possesses or to produce documents *other particular documents specified in the order* . . ."). But they explicitly approve of targeted requests for specific documents with direct relevance to the case. *Id.* at 153. Here, Muddy Waters is asking for "no more than a small handful of transaction records that identify the name, address, and contact information of the outside counterparty purchaser(s) in the December 15 Transactions." Plaintiff's Mem. 19. In Muddy Waters's own words, "[i]t is difficult to imagine a more targeted request." *Id.*

particularity, (b) the document request is not wide or oppressive, (c) the documents requested exist, (d) there is no need to consider the relevance of the evidence being sought for the U.S. proceedings.  Here, Muddy Waters has tailored its Letter of Request to transaction documents identifying the counterparties to the December 15 Transactions along with certain specific trade data information.  The request is neither wide nor oppressive—as Muddy Waters says, it is "difficult to imagine a more targeted [document] request."  Plaintiff's Mem. 19.   While this would be a matter for the Senior Master's discretion and judgement, there does not appear to be any reason for the High Court of England and Wales to deny Muddy Waters's request, especially in circumstances where MLI has confirmed it will not object.

Because the documents Muddy Waters seeks "can be obtained from some other source that is more convenient, less burdensome, [and] less expensive," Fed. R. Civ. P. 45(d)(1)), Muddy Waters should be made to take the reasonable step of following the already-commenced UK process for obtaining a UK company's documents.

### B.      Muddy Waters's Pleading Does Not Justify Intrusive Non-Party Discovery

Finally, the Court should deny Muddy Waters's motion to compel because the Complaint does not provide a basis for court-ordered discovery.   Early discovery to determine defendants' identities is not warranted where it is clear "the complaint would be dismissed on other grounds." *808 Holdings, LLC v. Collective Sharing Hash E3…*, 2012 WL 1581987, at \*3 (S.D. Cal. May 4, 2012) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *see also id.* at \*6-7 (denying early discovery because complaint would be dismissed for lack of personal jurisdiction and improper venue).

In *Twombly* and *Iqbal*, the Supreme Court clarified that in order to state a claim for relief, pleadings in the United States must meet a "plausibility standard."  *Ashcroft v. Iqbal*, 556 U.S. 662, 667-68 (2009) (citing *Twombly*, 550 U.S. at 557).  This standard "asks for more than a sheer

21

possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In *Twombly*, the plaintiffs claimed that certain telecommunications companies had violated the Sherman Antitrust Act by entering an agreement not to compete.  *Twombly*, 550 U.S. at 551.  Knowing the basic elements of an antitrust claim, the plaintiffs pleaded that the defendants "ha[d] entered into a contract, combination or conspiracy to prevent competitive entry . . . and ha[d] agreed not to compete with one another."  550 U.S., at 551 (internal quotation marks omitted). As evidence of this agreement, the plaintiffs alleged only that the defendants had followed a "parallel course of conduct" and inflated prices.  *Id.*

The Court held the complaint deficient.  It disregarded bare allegations of a non-competitive agreement as conclusory, *id.*, and focused on the allegation that the defendants acted in parallel, *id.* at 556. "Acknowledging that parallel conduct was consistent with an unlawful agreement, the Court nevertheless concluded that it did not plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior."  *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567).  "Because the well-pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an unlawful agreement, the Court held the plaintiffs' complaint must be dismissed."  *Id.*

Muddy Waters's Complaint suffers from the exact same deficiency.  It checks off the elements of insider trading in a conclusory manner.  Compl. ¶ 29 ("The December 15 Buyers participated in the December 15 Transactions because, upon information and belief, they possessed material non-public information concerning the fact that Casino would imminently issue its

deleveraging announcement.").[11]  But the sole non-conclusory factual allegation offered in support of the claim is the close timing between the December 15 Transactions and Casino's public announcement that it would deleverage.

Muddy Waters claims the timing is especially suspicious because "for two weeks leading up to the December 15 Transactions, [Muddy Waters] was unable to locate significant trading partners . . ." [and] "markets in securities like the Casino Bonds are typically very slow during the two weeks before the Winter Holidays."  Compl. ¶ 30.  But these assertions do not amount to a well-pleaded fact that the December 15 Transactions were unusual.  They fail to provide any sense of the scales involved.  In the first place, Muddy Waters acknowledges it received $5.1 million for three blocks of Casino bonds on December 9th and 10th.  *Id.* ¶ 5.  Muddy Waters evidently wants the reader to infer this was quite low in comparison to the December 15 Transactions, but it (curiously) never states how many blocks the December 15 counterparties bought for their $18 million.  So what difference is actually alleged?  Similarly, Muddy Waters does not say what it means for markets to be "very slow" during the two weeks before the Winter Holidays.  Are they normally slow enough to make the December 15 Transaction an alarming exception?  These deliberately non-specific allegations do nothing to move Muddy Waters's claim from possible to plausible.  That leaves only the well-pleaded fact that the December 15 Transactions and the deleveraging announcement were close in time.  But although the close timing is "consistent with" the counterparties possessing material, non-public information, it is equally compatible with ordinary free-market behavior.  Therefore, even accepting Muddy Waters's well-pleaded

---

[11] These "naked assertion[s] devoid of further factual enhancement" do not satisfy Rule 8.  *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted).

allegations as true, the Complaint does not plausibly state a claim for insider trading and would not survive a motion to dismiss.  *Id.*[12]

There are, of course, no named defendants in the action to make a motion to dismiss.  But that does not mean Muddy Waters can skip past the pleading stage.  Having failed to plead sufficient facts to state a claim, Muddy Waters should not be allowed to use the Court to compel production of documents in the hope of discovering facts any other plaintiff would need to plead in the first instance.

### C. Muddy Waters's Subpoenas Have Exceeded The Permissible Scope for Non-Party Discovery Under Rule 45

Finally, Muddy Waters's assertion that Respondents have engaged in a "campaign of obstruction and delay"[13] is false and simply reveals Muddy Waters's own unreasonable and harassing discovery tactics.  From the very beginning, Respondents told Muddy Waters that ML Pro did not have the requested documents and Muddy Waters should go to MLI.  Instead of using that procedure—which, as detailed above, can be quick and straightforward—Muddy Waters chose to serve eight separate subpoenas on Bank of America entities, in violation of Rule 45's requirement that parties take reasonable steps to avoid undue burden and expense, particularly on non-parties.  Even so, Respondents attempted to locate responsive documents in their possession,

---

[12] Muddy Waters's Complaint is defective for two additional reasons. First, "insider trading claims are subject to Federal Rule of Civil Procedure 9(b)'s requirement that circumstances constituting fraud be plead with particularity." *Securities and Exchange Commission v. Afryie*, 2018 WL 6991097, at *2 (S.D.N.Y. Nov. 26, 2018).  Muddy Waters is light years away from meeting this standard.  Second, Muddy Waters has not adequately pled damages caused by the unnamed defendants' actions.  The Complaint alleges only that selling to Defendants "diminish[ed] the profits [Muddy Waters] otherwise might have made when [it] subsequently closed out the short positions on the Casino Bonds."  Complaint ¶ 7.

[13] *See* Plaintiff's Mem. 16; *see also id.* at 1, 21-22

asked MLI whether it could produce the documents voluntarily, and put forward a 30(b)(6) witness to testify to ML Pro's knowledge of designated topics.[14]   In other words, Respondents have cooperated with Muddy Waters's unreasonable discovery requests.  More importantly, they (as well as MLI) have told Muddy Waters what it needs to do in order to obtain the requested documents.  Under Rule 45, Respondents should not bear the burden of Muddy Waters's 5-month delay in seeking the documents directly from MLI.

## CONCLUSION

Muddy Waters is asking this Court to compel the production of documents Respondents do not have, at the expense of a UK-based process that the actual document custodian will not oppose, on the basis of a Complaint that does not state a claim. The Court should deny Muddy Waters's Motion to Compel Discovery or, in the alternative, hold this motion in abeyance until Muddy Waters has the opportunity to obtain an order from the High Court of England and Wales to give effect to a Letter of Request for documentary evidence sought from MLI directly.


Dated: New York, New York

January 3, 2020                                    WINSTON & STRAWN LLP

                                                  By: s/ Luke A. Connelly
                                                      Luke A. Connelly
                                                      Andrew T. Foglia
                                                      200 Park Avenue
                                                      New York, NY  10166

---

[14] Muddy Waters argues that ML Pro's 30(b)(6) witness was not adequately prepared for deposition, Plaintiff's Mem. 21, but he was prepared to and did testify as to ML Pro's knowledge of the December 15 Transactions and the custody of records related to the transactions.  *See* Griffin Tr. at 44-46 (discussing the December 15 Transactions and ML Pro's knowledge of counterparties); 114-15 (discussing ML Pro's limited visibility into MLI).  Significantly, Muddy Waters has not requested an additional deposition on any topics, and its reliance on that deposition in its motion demonstrates that it was sufficient for these purposes.

Tel.: (212) 294-6700
Fax: (212) 294-4700
lconnelly@winston.com
afoglia@winston.com

*Attorneys for Bank of America Corp. and Merrill Lynch Professional Clearing Corp.*